## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL PELUSO, an individual,<br><br>               Plaintiff,<br><br>   v.<br><br>New Jersey Devils, LLC; St. Louis Blues Hockey Club, L.P.; Chubb Group Holdings, Inc., a/k/a Chubb Group, a/k/a Chubb Group of Insurance Companies, a/k/a Chubb Insurance Group, a/k/a Chubb Group Los Angeles, and Federal Insurance Company.<br><br>               Defendants. | Case No. _____<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael "Mike" Peluso ("Peluso"), through his undersigned counsel, brings this Complaint against the New Jersey Devils, LLC ("Devils"), St. Louis Blues Hockey Club, L.P. ("Blues") (collectively "Team Defendants"), and Chubb Group Holdings, Inc., a/k/a Chubb Group, a/k/a Chubb Group of Insurance Companies, a/k/a Chubb Insurance Group, a/k/a Chubb Group Los Angeles, ("Chubb") and Federal Insurance Company ("Federal"). (collectively "Defendants") as follows:

# INTRODUCTION

### "'*I'm 50 years old, I will die young.*' – Mike Peluso"[1]

1.      Newly discovered evidence reveals that Defendants committed serious breaches of their legal duties to Mike Peluso when they caused Mr. Peluso to suffer nine grand mal seizures, early onset dementia, total and permanent disability resulting in "a 0% post injury earnings capacity," and severe neurological and psychological impairment. Defendants deliberately, fraudulently, and with callous disregard for Mr. Peluso's health and safety, concealed medical records from him that stated very clearly that his health was in danger and that he must never sustain any further traumas to his head if he were to avoid debilitating, long-lasting brain damage.   Newly discovered evidence reveals that Defendants committed several discovery violations in connection with a worker's compensation action and violated obligations to protect Mr. Peluso by not disclosing this critical evidence.  Newly discovered evidence reveals that Mr. Peluso is 100% Permanently Disabled because he suffered  countless injuries to his brain resulting in permanent mental incapacity as a direct result of Defendants' callous actions.

2.      Defendants did more than ignore these warnings provided by a Board-Certified Neurologist after Michael had his first grand mal seizure; after they were armed with this knowledge, Defendants did not inform Peluso; they did not take any measures to protect Peluso; and they hid these documents for 22 years.

---

[1] TSN, *Lifetime Penalty*, http://longform.tsn.ca/lifetime-penalty (Interview between Mike Peluso and Rick Westhead)).

- ***New Jersey Devils–Chubb Insurance "'wrongfully withheld' [medical records from Michael Peluso]…."*** – California Workers Compensation Appeals Board Ruling[2]

3.     However, after 22 years Defendants' malicious secret has been uncovered. Finally, Peluso has the same information that Defendants have had for years, i.e., 1) his brain injuries were preventable; 2) Defendants knew those brain injuries were preventable; 3) Defendants knew his brain injuries would lead to long-term, permanent brain damage; and 4) rather than prevent his head injuries or protect him or simply provide him with the information and let him make decisions crucial to his health, Defendants chose secrecy, putting their profits far ahead of Mr. Peluso's health.

- ***"NHL team 'wrongfully withheld' documents in brain-injury case"*** – Rick Westhead TSN[3]

4.     Further, as a direct result of Defendants' actions, Defendants caused, and continue to cause serious emotional distress to Mr. Peluso.  Every single day he has to deal with the reality that the Defendants could have prevented his chronic seizure disorder, dementia, and permanent brain damage.  These actions not only aggravate Mr. Peluso's current injuries; but every single day that goes by his suffering increases.  Defendants' actions – particularly Chubb's – have actually created new injuries to Mr. Peluso – similar to that of *Unruh,[4] Joblonski,[5]* wherein the California Supreme Court and California Court of Appeals found punitive damage appropriate against a worker's compensation insurance

---

[2] *Peluso v. New Jersey Devils; Chubb Ins.; et al*; ADJ8643967 (Order Granting Mr. Peluso's Removal) found at https://www.scribd.com/document/334885183/Peluso-decision
[3] http://www.tsn.ca/nhl-team-wrongfully-withheld-documents-from-player-in-brain-injury-case-1.636989
[4] *Unruh v. Truck Ins. Exchange*, 7 Cal.3d 616 (Cal. 1972).
[5] *Jablonski v. Royal Globe Ins. Co.*, 204 Cal. App. 3d 379, 391 (Cal. App. 3d Dist. 1988).

carrier and *Johns–Mansville*[6] where the California Supreme Court awarded punitive damages for similar actions against an employer.

5.     This is not simply a case were Defendants are ***alleged*** to know the link between head injuries and permanent brain damage.  This is a case where ***Defendants knew the link between Mr. Peluso's head injuries and permanent brain damage*** because they had their own Board Certified Team Neurologist tell them that ***Mr. Peluso*** ***would have brain damage if they allowed him to continue to receive head injuries***.

6.     The NHL stated in its response to claims filed by former NHL players that the players should have put "two and two together";[7] perhaps the NHL's words are more appropriately directed to the Defendants who had possession of the medical record that put two and two together for them – and they callously ignored the evidence.  The irony is as inescapable as it is cruel.  The NHL and Defendants say players like Mr. Peluso should have put "two and two together" about brain injuries, the cause of which, the NHL and Defendants – in adamantine denial of abundant and growing scientific evidence, and in contradiction of some of its most experienced personnel – say is still unknown.

## I.       PARTIES

7.     Mike Peluso was one of the toughest and fiercest enforcers in NHL history. Peluso played in the NHL from 1989 to 1998.  Mr. Peluso played from: 1989-1992 for the Chicago Blackhawks and its affiliates; 1992-1993 for the Ottawa Senators; 1993-1996 for

---

[6] *Johns–Mansville v. Contra Costa Cnty Sup. Ct.*, 27 Cal. 3d 465 (Cal. 1980).
[7] (Doc. 46 at 12).

the New Jersey Devils; 1996-1997 for the St. Louis Blues; and 1997 for the Calgary Flames.

8.    Mr. Peluso played in 458 NHL games as a forward/enforcer. As an enforcer – a position in Hockey where the primary job duty is to protect the skilled the players which requires constant initiating and engaging in bare knuckled fist fights – Peluso was involved in a total of 240 fights in NHL games.  Peluso had 1,951 penalty minutes during his NHL career and is one of only four NHL players to incur over 400 penalty minutes in one season.

9.    Peluso was part of the famed "Crash Line" of the mid 1990's – known for their unwavering loyalty to follow the directions of their coaches to protect skilled players at all costs – including through violence, a required lack of regard for their own safety, and reckless abandonment.

10.    With the encouragement and under the direction of the Team Defendants, and without any warnings about the serious risks to his brain, Peluso participated in hundreds of bareknuckle fights throughout his NHL career.  Peluso also received body checks, slashes from hockey sticks, blows delivered by fists, elbows, and other body parts, to his head and other body parts during the course of games and practices throughout his professional playing career.

11.    Peluso currently has permanent damage to the right side of his brain (he was a left–handed fighter and absorbed the majority of punches to the right side of his brain); has had 9 grand mal seizures; has early onset dementia at the young age of 51, and struggles daily with depression, anxiety, memory loss, and the constant threat of more seizures.

12.     Peluso has spent in excess of $100,000.00 on medical bills for seeing a neurologist, paying for anti-seizure medications, and for costs related to the seizures such as ambulance and hospitalization fees and medical tests since he retired from the NHL in 1997/1998 and over the course of his lifetime, his medical care will exceed $10,000,000.00.

13.     Peluso is a resident and citizen of the State of Minnesota. Peluso was employed as professional hockey player in the NHL at various times and locations from 1990 until 1998.  Peluso was born in Minnesota and has maintained residency in Minnesota throughout his playing career.

14.     Defendant New Jersey Devils, LLC is a company incorporated under the laws of Delaware with a principal place of business located at 25 Lafayette Street, Newark, New Jersey 07102. The Devils have played multiple NHL games in the State of Minnesota since 1993, and continue to do so every year.  The Devils conduct substantial business in the State of Minnesota.

15.     Defendant St. Louis Blues Hockey Club, L.P. is a Missouri limited partnership with a principal place of business located at 231 South Bemiston, Ste. 1200, Clayton, Missouri 63105, same as with the Devils.

16.     Defendant Chubb Group Holdings, Inc. a/k/a Chubb For Federal Insurance Company, is a company incorporated under the laws of Delaware with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106 with offices located in Los Angeles, California. Chubb conducts substantial business in the State of Minnesota through its various subsidiaries and affiliates.

17.     Defendant Federal Insurance Company, LLP, is a company incorporated under the laws of Delaware with a principal place of business at 202B Halls Mill Road, Whitehouse Station, NJ 08889. Federal conducts substantial business in the State of Minnesota through its various subsidiaries and affiliates. Chubb administers policies for Federal.

## II.      JURISDICTION AND VENUE

18.     Jurisdiction is based on 28 U.S.C. § 1332(a)(1). Plaintiff is diverse from all Defendants.  The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

19.     Defendants are subject to the *in personam* jurisdiction of this Court, and venue is therefore proper herein pursuant to 28 U.S.C. § 1391, because Defendants conduct business within the State of Minnesota, and have had continuous and systematic contacts with the State of Minnesota.  Upon information and belief, Defendants also made material, fraudulent, and negligent misrepresentations, and acted negligently toward Mr. Peluso in this District.

20.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions that give rise to the claims occurred within the State of Minnesota and this District, and the Defendant conducts a substantial part of its business within this District.

## III.    THE CONNECTION BETWEEN DEFENDANTS' HIDING OF KEY MEDICAL DOCUMENTS AND MICHAEL'S PERMANENT BRAIN DAMAGE

### A.    12/18/1993: MR. PELUSO SUSTAINS A CONCUSSION IN AN NHL GAME.[8]

21.    On 12/18/1993, while playing for the New Jersey Devils, Mr. Peluso played a game against the Quebec Nordiques, in Quebec, Canada.

22.    During the game, Mr. Peluso was punched in the head and knocked unconscious by opposing player Tony Twist, and his head slammed against the ice. Mr. Peluso had to be carried off the ice into the locker room. While in the locker room, team staff observed that Mr. Peluso was suffering from memory loss, *i.e.*, he repeatedly showered in the locker room, forgetting he had already showered. While in the locker room, Mr. Peluso also experienced headaches, dizziness and nausea. As a result, Mr. Peluso was hospitalized for two days in Quebec after the incident.

23.    Video of the Incident Below– 12/18/1993:[9]

>    *YouTube Video*: https://www.youtube.com/watch?v=N34jPRwd0AA:
>
>    Mr. Peluso is punched in the face and his head is slammed into the ice.  Mr. Peluso is knocked unconscious. Comment by the administrator who uploaded the video: "**Absolutely brutal, Twist lands a right to the temple of Peluso and KO's him. I thought Peluso was dead when I first saw this**."

---

[8] (*See* "Mike Peluso Fight Record")
[9] *See* YouTube Video where the Mr. Peluso and knocked unconscious by opposing player Tony Twist on 12/18/93 (available at https://www.youtube.com/watch?v=N34jPRwd0AA)

# December 18, 1993, Fight that Leads to Mr. Peluso's First Grand Mal Seizure



*Figure 1- Mike Peluso: No Helmet in a bareknuckle fight that led to the concussion that precipitated his first Grand Mal Seizure.*



*Figure 2 – Mike Peluso is hit in the head with a bareknuckle fist*



*Figure 3 – Mike Peluso is hit again on his left temple and knocked unconscious*



*Figure 4 – Mike Peluso's unprotected skull is driven into the ice by the opposing player*



*Figure 5 – Mike Peluso's unprotected skull bounces off the ice floor*



*Figure 6 – Mike Peluso lays unconscious*



*Figure 7 – Mike Peluso lying unconscious as a result of his skull being driven into the ice after a bareknuckle punch knocks him out*



*Figure 8 – Mike Peluso is helped off the ice and sent to the locker room where staff observed him repeatedly showering in the locker room because he could not remember that he had already showered. Mike also experienced headaches, dizziness and nausea.*

*Mike went on to have nine (9) Grand Mal Seizures as a result and now lives with a Chronic Seizure Disorder and Early onset Dementia.*

24.     One sports website reported the fight as follows:

> The fight is over quickly. Twist lands 2 hard punches and Peluso is helmetless…. [Twist's punch] catches Peluso flush on the jaw and Peluso collapses and is knocked out before he hits the ice. Due to Peluso's helmet being off he really smashed his head on the ice when he went down.
>
> Peluso is motionless on the ice clearly out of it. He manages to lift his head up but he is obviously in bad shape. Randy McKay helps the New Jersey trainer get to Peluso and they attend to him. Peluso would end up spending the night in the hospital                with                 a                 concussion….
>
> Peluso: "We were up 3-0 and he had to try and swing the momentum, so he asked me if I wanted to go. He was an honest guy and always asked first, so I respected that a lot about                                                                him….

Twist: "There was one fight I felt bad about, though. It was when I was with Quebec and we played New Jersey one time, and I got into a pretty good fight with Mike Peluso. Well, I wound up knocking him out cold and went to visit him in the locker room afterward. I said to him "Mikey, man I                  am                  so                  sorry."

Although there were no hard feelings between the 2, unfortunately problems would still develop for Peluso. He would have concussion problems for the next several weeks….

This fight remains one of the most vicious KO's in NHL history and Peluso was lucky he wasn't too hurt and was able to continue after this. Some players are never the same after something like this….

**B.    12/18/1993: [AFTER THE GAME] INJURY REPORT SHOWS MR. PELUSO SUSTAINS A CONCUSSION AND LACERATION FROM THE FIGHT AND CONCURRENT SLAMMING OF HIS HEAD TO THE ICE AND IS HOSPITALIZED OVERNIGHT.**

25.    The injury report following the Devils-Nordiques game reveals that Mr. Peluso sustained a concussion and laceration from the fight and was hospitalized overnight. The Report also appears to indicate that the same evening Mr. Peluso was cleared to return to play.  Several "Injury Report[s]" of the New Jersey Devils were produced in discovery of his workers compensation case by Defendants; ***however, highly suspiciously, this particular document was omitted from Defendants' production in his worker's compensation case***.



### C.    12/23/1993:

26.    Shortly after his hospitalization from this serious injury, and despite not being able to remember his way to the arena (Mr. Peluso's girlfriend had to drive him to the arena), Mr. Peluso was forced to come back to work.  Mr. Peluso's head coach informed him that the opposing team had six "linebackers" and Mr. Peluso was needed to protect the skilled players that evening.  Mr. Peluso complied and played in a game against the Toronto Maple Leafs. During that game, Mr. Peluso was hit in the head by opposing player Ken Baumgartner and sustained further head injury.  ***Despite this occurring with the team, no documents regarding this event were ever produced in his workers compensation case.***

| Fight at 18:57 | Height | Weight | Thrown | Punches Landed |
|---|---|---|---|---|
| Duration 0:15 | | | Thrown | Landed |
| Ken Baumgartner | 6'1" ↓3 | 205lb ↓20 | 8 | 1 |
| Mike Peluso | 6'4" ↑3 | 225lb ↑20 | 6 | 2 |

## Review

### Draw

Bill Berg hits Mike Peluso against the boards and Peluso comes back with a shove from behind on Berg that earns Peluso a penalty. Ken Baumgartner steps in to stick up for Berg and goes at Peluso. Peluso shoves Baumgartner back, they drop the gloves, and then square off. Peluso moves in fast though and grabs on as Baumgartner misses a left. Peluso throws two lefts, landing one and Baumgartner misses two lefts. Peluso misses a left while Baumgartner misses a left, then Peluso misses a left. Baumgartner misses a left and then lands a left as Peluso lands a left. Peluso misses a left and then Baumgartner misses three lefts while Peluso goes down. The referees come in and they break up the fight there. Alright fight. Draw.

     **D.**   **02/14/1994:** M<small>R.</small> P<small>ELUSO</small> E<small>XPERIENCES</small> A M<small>AJOR</small> M<small>OTOR</small> S<small>EIZURE</small> A<small>ND</small> I<small>S</small> H<small>OSPITALIZED</small> O<small>VERNIGHT.</small>

27.     On February 14, 1994, while working out with his team the day following a game in St. Petersburg, Florida, Mr. Peluso suffered a grand mal seizure. The New Jersey Devils' team trainer provided Mr. Peluso with a bottle of Tegretol, an anti-seizure medication. ***Despite this occurring with the team, no documents regarding this event were ever produced in Mr. Peluso's worker's compensation case.***

## Devils' Peluso has a seizure after Twist fight

**Sun-Sentinel wire services**

New Jersey defenseman Mike Peluso experienced a seizure last week in which he had to be restrained by teammates in a workout room.

He was hospitalized in St. Petersburg for two days after the incident, in which he trashed the room in which the Devils were exercising. Some fear that the reaction was as a result of a concussion Peluso sustained Dec. 18 in a fight with Quebec's Tony Twist.

"That was the first thing I thought of, that he was still having problems from that concussion," said defenseman Viacheslav Fetisov. "I was on the ice that game when he hit his head [on the ice], and it was scary.

"I'm not a doctor, but you have to rest a little after something like that. Mike is just a workout machine — especially on his day off. Other guys are resting and he wants to work out."

**E.      02/18/1994: LOU LAMORIELLO – PRESIDENT AND GENERAL MANAGER OF THE DEVILS – STATES THAT MR. PELUSO'S SEIZURE WAS RELATED TO DEHYDRATION[10]**

28.    According to the New York Times:

> MIKE PELUSO will have more tests Friday in New Jersey to determine the cause of seizure he suffered on Monday during the team's mini-vacation in Florida. LOU LAMORIELLO, the president and general manager of the Devils, said the seizure was primarily due to dehydration and lack of nutrition. But the Devils are concerned that it could be related to a concussion Peluso suffered in Quebec Dec. 18. Peluso banged his head on the ice during a fight with TONY TWIST of the Nordiques and was kept overnight in a hospital for observation.

[10] *See* Alex Yannis, "HOCKEY - Consecutive-Shot Goals Confound Brodeur Again" NEW YORK TIMES, Feb. 18, 1994.

F.    **12/93-2/94**: Peluso Is Prevented From Taking Time Off and Sustains Multiple Head Injuries – Including 10 Documented Bare Knuckle Fists to His Brain - From 7 Fights Between His 12/18/93 Concussion and Being "Cleared" to Return on 12/20/94.

29.    From www.Dropyourgloves.com:

| 13 | Dec 18 | NHL | NJ-Que | Tony Twist | ↑3 | ↓5 | KO Loss | 8.8 | R(24),M(8) | 2-5 | 1-3 |
|----|--------|-----|--------|------------|----|----|---------|-----|-----------|-----|-----|
| 14 | Dec 23 | NHL | Tor-NJ | Ken Baumgartner | ↑3 | ↑20 | Draw | 4.8 | R(5),M(2) | 6-8 | 2-1 |
| 15 | Jan 4 | NHL | NYI-NJ | Dean Chynoweth | ↑2 | ↑35 | Win | 3.7 | R(3),M(1) | 7-1 | 2-0 |
| 16 | Jan 19 | NHL | NJ-Win | Dean Kennedy | ↑2 | ↑17 | Draw | 3.7 | R(3),M(3) | | |
| 17 | Jan 26 | NHL | NJ-Edm | Kelly Buchberger | ↑2 | ↑25 | Win | 6.2 | R(5),M(2) | 7-2 | 5-0 |
| 18 | Feb 2 | NHL | Buf-NJ | Matthew Barnaby | ↑3 | ↑34 | Win | 7 | R(7),M(2) | 15-15 | 6-4 |
| 19 | Feb 20 | NHL | NJ-Chi | Cam Russell | | ↑25 | Win | 5.5 | Rev (2) | 11-8 | 4-2 |

G.    **02/20/1994**: Three Newspaper Outlets – Including the New York Times and Prior to the 2/21/94 Report – Announced that Mike Peluso Has Been Cleared By Team Doctors And Allowed to Continue Sustaining Further Head Injury.

30.    From the New York Times, 2/20/94:

MIKE PELUSO , who went into a seizure last Monday as a result of dehydration, returned to the lineup after receiving clearance from the Devils' doctors. . . . STEPHANE RICHER developed a sore back this morning and was scratched. . . . JASON SMITH was the other scratch for the Devils, who were left with 22 players after BEN HANKINSON made his sixth trip to the team's top affiliate in the minor leagues, the Albany River Rats of the American Hockey League.

H.    **02/21/1994**: Devils' Neurologist Finds Mr. Peluso's Grand Mal Seizure Is Caused By The Fight And Concussion Sustained on 12/18/93 And Mr. Peluso Can Only Continue To Play If He Doesn't Sustain Further Head Injuries.[11]

---

[11] *See* 02/21/1994 Report of Dr. Marvin Ruderman of the Neurology Associates of New Jersey

31.    Although Peluso had no memory of being sent to a neurologist, newly discovered evidence reveals that Peluso was in fact sent to a neurologist by the Devils on 2/21/1994. Dr. Marvin I. Ruderman, a board-certified neurologist examined Michael and expressly warned Defendants that if Michael were subjected to additional head injuries, he would have long–term brain damage.

32.    In what appears to be an extreme effort to ensure the team was aware of this, Dr. Ruderman did not simply send his report to one team official. Instead, Dr. Ruderman immediately sent his report to 1) the New Jersey Devils General Manager, Lou Lamoriello, 2) the New Jersey Devils Team Doctor, Dr. Barry Fisher, and 3) the New Jersey Devils Orthopedic Surgeon, Dr. Leonard Jaffe. Notably, Peluso was not copied on the Report as were Lamoriello, Fisher, and Jaffe. And, Peluso was not informed of the contents nor was the Report was ever sent or provided to Peluso.

33.    The Report found that Mr. Peluso was at risk of long term neurological problems and a Chronic Seizure Disorder if Defendants allowed Mr. Peluso to sustain any additional hits to his head.[12] Further, the report stated that Mr. Peluso's Grand Mal Seizure on 2/14/94 was directly related to his 12/18/1993 concussion and not to "Dehydration" – as concluded by the Devils GM Lou Lamoriello. Relevant excerpts follow:

---

[12] *Id.*

**NEUROLOGY ASSOCIATES, P.A.,**

**MARVIN I. RUDERMAN, M.D., F.A.A.N.**
DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY & NEUROLOGY (N)
DIPLOMATE, AMERICAN BOARD OF ELECTRODIAGNOSTIC MEDICINE

**STUART G. MENDELSON, M.D.**
DIPLOMATE, AMERICAN BOARD OF PSYCHIATRY & NEUROLOGY (N)
DIPLOMATE, AMERICAN BOARD OF ELECTRODIAGNOSTIC MEDICINE

33 CLINTON ROAD
WEST CALDWELL, NJ 07006
(201) 227-3344

NEUROLOGY
ELECTROMYOGRAPHY
ELECTROENCEPHALOGRAPHY
NEUROMUSCULAR DISORDERS

February 21, 1994

Leonard Jaffe, M.D.
609 Morris Avenue
Springfield, New Jersey  07081                  Re:  Mr. Mike Peluso

Dear Len:

I had the opportunity to examine Mr. Mike Peluso in my office on February 18, 1994. The patient is a 28 year old gentleman with no complaints at the present time. He reportedly experienced a seizure on 2/14/94.

Mr. Peluso is a hockey player for the New Jersey Devils. He said he had played a game on 2/13/94, and the following day while exercising on a stairmaster, he felt dizzy and lightheaded, and passed out. He apparently suffered a grand mal seizure at that time. Mr. Peluso said

*Figure 1 – above – Neurologist states that Mr. Peluso sustained a seizure while working out with the team.*

flexor bilaterally. The gait was normal, including heel, toe and tandem walking. The Romberg sign was negative.

I find that Mr. Peluso's neurological examination is normal at the present time. He likely experienced a major motor seizure on 2/14/94, which I believe is most likely related to a post-traumatic seizure as a consequence of the cerebral concussion in December 1993. I do not believe this was related to dehydration. The use of alcohol on the previous evening may have been a factor in lowering the seizure threshold, although I believe it is less likely that this was simply an alcohol withdrawal in view of the EEG results. I asked Mr. Peluso to increase the dose of Tegretol to 200 mg. PO tid. A serum Tegretol will be obtained on 2/24/94, and a CBC was requested. A repeat CBC

*Figure 2 – above – Neurologist states that Mr. Peluso's seizure was caused by 12/18/93 concussion and not dehydration*

understands that there is still a risk of recurrent seizures. I do not believe that the participation in playing hockey in itself poses an excessive risk for the development of further seizures unless he were to sustain head injuries. He will continue to use a helmet. I advised that he refrain from driving for at least six months. I will be in contact with Mr. Peluso again following results of the serum Tegretol level.

Thank you for referring this patient for evaluation.

Sincerely,

Marvin I. Ruderman, M.D.
MIR/jw

cc:  Dr. Barry Fisher
     Mr. Leo Lamoriello

*Figure 3 – above – Report was sent to Devils' GM and Team Doctor and Neurologist was retained by the Devils. Report clearly states that Mr. Peluso can only continue playing if the Defendant prevented further head injuries*

17

I.    **MR. PELUSO IS NEVER INFORMED OF THIS REPORT OR ITS CRUCIAL FINDINGS**

34.    In August, 2015, Mr. Peluso stated to NJ.com:[13]

> "It's how they threw me out onto the ice. I'd had a grand mal seizure and Dr. Fisher handled the situation and said I was good to go," Peluso told NJ Advance Media about a serious incident in 1993. "I heard (trainer) Teddy Schuch say, 'I don't think he's ready,' but Teddy was overruled by Dr. Fisher.
>
> "**<u>I should have seen a neurologist</u>**. When the doctor clears you, you think you're healthy. What is a team doctor for? I'm not a doctor. If you're a goal-scorer and you have a concussion, maybe for a couple of weeks you can stay out of traffic. For me, it was like being a gunslinger with no gun. That was my role."

35.    Despite widespread knowledge that head injuries are inherent in ice hockey – especially those who have Mr. Peluso's job title of enforcer, the Devils sent Mr. Peluso back to work despite his documented increased vulnerability to additional head injuries and brain trauma.

36.    Chubb was the Devils' insurance carrier during this period and received team records that included the February 21, 1994 Ruderman Report during their regular course of business. Chubb intentionally suppressed, failed to produce, and denied that Report's existence in a deliberate attempt to withhold workers' compensation benefits from Peluso.

37.    Team Defendants, despite knowing the likelihood of repeated head trauma for every professional player (and particularly enforcers like Mr. Peluso), willfully and

---

[13]    Rich Chere, *Devils cut ties with longtime team doctor Barry Fisher*, NJ.com (available at http://www.nj.com/devils/index.ssf/2015/08/post_63.html) (citations in original)

callously disregarded the safety of Peluso by agreeing to conceal, and concealing the severe risk posed to Mr. Peluso's health if he continued playing.

38.    The Devils intentionally misrepresented his condition and informed Peluso he was fit to return to play, pushed him to return to his duties, and instructed him to continue his role as the team's enforcer.

39.    Had Peluso been made aware of the severe risk identified by Dr. Ruderman, he would not have continued his career as a professional hockey player. Unfortunately, no Defendant ever informed him that he was at excessive risk of further seizures or permanent brain damage if he were to sustain more head injuries.

40.    Peluso, ignorant of the critical medical information the Defendants concealed from him, continued his professional hockey career as an enforcer. He was subsequently acquired or signed by defendant Blues, New York Rangers, and Calgary Flames.

41.    The Blues, Rangers, and Flames were provided with prior medical and team records. Each of them, despite being in possession of the Ruderman Report and knowing the excessive risk posed to Peluso if he were to sustain additional head trauma, intentionally concealed such information from him pursuant to their agreement with the NHL and other Team Defendants in order protect the highly-marketed brand of the league.

42.    The Blues, Rangers, and Flames also each falsely informed Mr. Peluso that he was fit to perform his duties an enforcer in order to continue profiting off the marketed violence of NHL hockey.

### J. AS EXPECTED, MR. PELUSO SUSTAINS HUNDREDS OF ADDITIONAL HITS TO HIS HEAD RESULTING IN HEAD INJURIES INCLUDING BEING IN 105 SUBSEQUENT BARE–KNUCKLED FIST FIGHTS AFTER 12/18/1993 (240 FIGHTS TOTAL).[14]

43.     Despite the NHL and Defendants having information that Mr. Peluso could not sustain any further head injuries – and hiding this vital information from Mr. Peluso – Mr. Peluso went on to sustain hundreds of additional head injuries including **being in 105 subsequent fights after 02/21/1994** (240 fights total).

44.     Team Defendants then permitted and encouraged Peluso to engage in **105 subsequent fights** after February 21, 1994. Team Defendants knew, of course, that continued fighting would result in further trauma to Peluso's head. Team Defendants also knew Peluso would be exposed to extreme risk of serious injury simply by continuing his career as a professional hockey player.

45.     Team Defendants intentionally agreed to, and did, conceal Peluso's condition as well as the risks of repetitive head trauma from him in order to continue making billions of dollars by profiting from fighting and violence.

46.     The fights that Mr. Peluso participated in at the request of the Team Defendants subsequent to the 12/18/93 concussion are as follows:

---

[14] (*See* "Mike Peluso Fight Record") (105 subsequent fights after 12/18/1993 resulting in head injuries. (240 fights total) (*See* YouTube Videos:
    a.  02/05/1990, San Jose, California: https://m.youtube.com/watch?v=ajfW5d2Df6s
    b.  03/14/1990, Los Angeles, California:  https://m.youtube.com/watch?v=qE3E1c1zXWA
    c.  02/05/1992, San Jose, California:  https://m.youtube.com/watch?v=gwOjfKrHzB0
    d.  11/07/1993, San Jose, California:  https://m.youtube.com/watch?v=loAb9750CUc
    e.  11/02/1995, San Jose, California:  https://m.youtube.com/watch?v=L9TUylAGAYM
    f.  03/13/1997, Los Angeles, California:  https://www.youtube.com/watch?v=x7vxcdSlTOk).

# Mike Peluso Fights

**Height 6'4" (193 cm)   Weight 225 lb (102 kg)**

## Total 259 Fights (.354 per Game)
## Career 76-55-61 / Win 53% / Fun 4.9
**14 unfair fights**

# Mike Peluso 1993-1994 Fights

| # | Date | Lg | Game | Opponent Name | Ht+/- | Wt+/- | Out come | Fun | Reviews Messages | Punches (For-Ag) Thrown | Landed |
|---|------|----|----|----|----|----|----|----|----|----|----|
| 1 | Sep 16 | NHL | NJ-Phi | Jim Cummins T2T | ↑2 | ↑15 | Win | 5 | R(3).M(1) 🖳 | | |
| 2 | Sep 22 | NHL | Phi-NJ | Jim Cummins T2T | ↑2 | ↑15 | Loss | 5.5 | R(8).M(1) 🖳 | | |
| 3 | Sep 23 | NHL | Har-NJ | Scott Daniels | ↑1 | ↑10 | | | Update / Review | | |
| 4 | Oct 1 | NHL | NJ-NYR | Adam Graves | ↑4 | ↑20 | Draw | 4.4 | R(5).M(1) 🖳 | 8-5 | 1 |
| 5 | Oct 1 | NHL | NJ-NYR | Mike Hartman | ↑4 | ↑25 | Win | 5.2 | R(6).M(1) 🖳 | 9-4 | 7 |
| 6 | Oct 8 | NHL | NJ-Wsh | Kevin Hatcher | ↑1 | ↓7 | Draw | 6.2 | R(6).M(4) 🖳 | 16-9 | 11 |
| 7 | Oct 12 | NHL | Win-NJ | Tie Domi T2T | ↑6 | ↑12 | Loss | 7.1 | R(16).M(5) 🖳 | 9-9 | 5 |
| 8 | Oct 16 | NHL | NJ-NYI | Mick Vukota | ↑2 | ↑10 | Loss | 3.2 | R(5).M(1) | 1-4 | 0 |
| 9 | Nov 7 | NHL | NJ-SJ | Doug Zmolek | ↑2 | ↑5 | Draw | 3 | R(6).M(1) 🖳 | 5-4 | 2 |
| 10 | Nov 20 | NHL | Det-NJ | Terry Carkner | ↑1 | ↑15 | Draw | 1.8 | R(4).M(1) 🖳 | 0-3 | 0 |
| 11 | Nov 23 | NHL | NJ-Que | Chris Simon | ↑1 | ↓8 | Loss | 6.3 | R(12).M(3) 🖳 | 6-7 | 4 |
| 12 | Dec 4 | NHL | Chi-NJ | Neil Wilkinson | ↑1 | ↑31 | Win | 4.3 | Rev (3) | 7-0 | 5 |
| 13 | Dec 18 | NHL | NJ-Que | Tony Twist 🐂 | ↑3 | ↓5 | KO Loss | 8.8 | R(24).M(8) 🖳 | 2-5 | 1 |
| 14 | Dec 23 | NHL | Tor-NJ | Ken Baumgartner | ↑3 | ↑20 | Draw | 4.8 | R(5).M(2) 🖳 | 6-8 | 4 |
| 15 | Jan 4 | NHL | NYI-NJ | Dean Chynoweth | ↑2 | ↑35 | Win | 3.7 | R(3).M(1) | 7-1 | 2 |
| 16 | Jan 19 | NHL | NJ-Win | Dean Kennedy | ↑2 | ↑17 | Draw | 3.7 | R(3).M(3) 🖳 | | |
| 17 | Jan 26 | NHL | NJ-Edm | Kelly Buchberger | ↑2 | ↑25 | Win | 6.2 | R(5).M(2) 🖳 | 7-2 | 5 |
| 18 | Feb 2 | NHL | Buf-NJ | Matthew Barnaby T2T | ↑3 | ↑34 | Win | 7 | R(7).M(2) 🖳 | 15-15 | 6 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 18 | | | Kypreos | | | | | | | |
| 2 | Sep 18 | NHL | NYR-NJ | Daniel Lacroix | ↑2 | ↑20 | | | Msg (1) | | |
| 3 | Sep 18 | NHL | NYR-NJ | Eric Cairns | ↓2 | ↓18 | Draw | 5 | Rev (1) | | |
| 4 | Sep 26 | NHL | NYI-NJ | Mick Vukota | ↑2 | ↑10 | Update / Review | | | | |
| 5 | Oct 12 | NHL | Win-NJ | Jason Doig | ↑1 | ↓4 | | | Msg (2) | | |
| 6 | Oct 28 | NHL | Pit-NJ | Chris Tamer | ↑2 | ↑20 | Draw | 3 | Rev (1) | | |
| 7 | Nov 2 | NHL | NJ-SJ | Jeff Odgers T2T | ↑4 | ↑25 | Loss | 8 | R(12),M(3) | | 14-19 | 10-12 |
| 8 | Nov 8 | NHL | Cal-NJ | Jamie Huscroft | ↑2 | ↑15 | TKO Win | 6.4 | R(5),M(1) | | |
| 9 | Nov 12 | NHL | NJ-Phi | Shawn Antoski | | ↓10 | Loss | 5.7 | R(6),M(6) | | |
| 10 | Nov 18 | NHL | Buf-NJ | Rob Ray | ↑4 | ↑3 | Draw | 2.2 | R(7),M(2) | | 1-4 | 0-0 |
| 11 | Dec 1 | NHL | TB-NJ | Rudy Poeschek | ↑2 | ↑15 | Loss | 4 | R(2),M(2) | | |
| 12 | Dec 6 | NHL | NJ-Mtl | Lyle Odelein | ↑5 | ↑15 | Loss | 4.3 | R(3),M(2) | | |
| 13 | Dec 15 | NHL | NJ-Det | Keith Primeau | ↓1 | ↑5 | Win | 7.7 | R(6),M(2) | | 16-10 | 7-3 |
| 14 | Dec 16 | NHL | Buf-NJ | Matthew Barnaby | ↑3 | ↑34 | Unfair | | R(2),M(3) | | |
| 15 | Dec 16 | NHL | Buf-NJ | Brent Hughes | ↑5 | ↑45 | Win | 4.3 | R(4),M(3) | | 12-4 | 8-1 |
| 16 | Dec 31 | NHL | NJ-Chi | Jim Cummins | ↑2 | ↑15 | Win | 6 | Rev (1) | | |
| 17 | Jan 9 | NHL | StL-NJ | Tony Twist | ↑3 | ↓5 | Loss | 3 | R(6),M(2) | | 1-3 | 0-2 |
| 18 | Jan 14 | NHL | Dal-NJ | Shane Churla | ↑3 | ↑25 | Win | 6.3 | R(4),M(2) | | 12-7 | 6-3 |
| 19 | Jan 30 | NHL | NJ-Van | Gino Odjick | ↑1 | ↑10 | Loss | 4.2 | R(5),M(2) | | 2-7 | 1-4 |
| 20 | Feb 3 | NHL | NJ-Ott | Dennis Vial | ↑3 | ↑5 | Win | 6 | Rev (2) | | |
| 21 | Feb 11 | NHL | Ana-NJ | Dave Karpa | ↑3 | ↑15 | Win | 5.5 | R(6),M(2) | | |
| 22 | Feb 21 | NHL | Fla-NJ | Radek | ↑2 | ↑25 | Unfair | | R(5),M(4) | | |

| # | Date | Lg | Game | Opponent | Ht+/- | Wt+/- | Outcome | Fun | Reviews Messages | | |
|---|------|----|----|----------|-------|-------|---------|-----|------|---|---|
| 19 | Feb 20 | NHL | NJ-Chi | Cam Russell | | ↑25 | Win | 5.5 | Rev (2) | 11-8 | 4 |
| 20 | Feb 28 | NHL | StL-NJ | Kelly Chase | ↑5 | ↑24 | Unfair | | R(2),M(1) | 4-1 | 2 |
| 21 | Feb 28 | NHL | StL-NJ | Kelly Chase | ↑5 | ↑24 | Draw | 5.5 | R(2),M(2) | 4-6 | 1 |
| 22 | Mar 5 | NHL | Cal-NJ | Sandy McCarthy | ↑1 | ↑2 | Loss | 5.8 | R(6),M(2) 🚂 | 11-3 | 3 |
| 23 | Mar 17 | NHL | NJ-Buf | Ken Sutton | ↑4 | ↑25 | Win | 4.2 | R(5),M(1) 🚂 | 12-3 | 3 |
| 24 | Mar 19 | NHL | NJ-Bos | Jamie Huscroft | ↑2 | ↑15 | Win | 6.3 | R(4),M(1) 🚂 | 8-7 | 4 |
| 25 | Apr 12 | NHL | NJ-Phi | Rob Zettler | ↑1 | ↑23 | Draw | 2.3 | R(3),M(2) 🚂 | 2-2 | 1 |
| 26 | Apr 14 | NHL | Ott-NJ | Dennis Vial | ↑3 | ↑5 | Draw | 6 | Rev (6) | 11-7 | 6 |
| 27 | Apr 17 | NHL | Buf-NJ | Brad May | ↑3 | ↑12 | Loss | 6.6 | R(5),M(2) | 12-15 | 4 |
| 28 | Apr 23 | NHL | NJ-Buf | Rob Ray | ↑4 | ↑3 | Draw | 5.6 | R(9),M(2) 🚂 | 6-10 | 4 |
| 29 | Apr 23 | NHL | NJ-Buf | Rob Ray | ↑4 | ↑3 | Win | 6 | R(7),M(19) | 7-2 | 5 |
| 30 | Apr 23 | NHL | NJ-Buf | Rob Ray | ↑4 | ↑3 | Draw | 3.2 | Rev (5) | 1-1 | 5 |
| 31 | May 21 | NHL | NYR-NJ | Jeff Beukeboom | ↓1 | ↓5 | Win | 3.7 | Rev (3) | 7-2 | 5 |
| | Totals | | | | | | 11-7-11 | | 180 | 194-143 | 9 5 |
| | Average per Fight | | | | ↑2 | ↑14 | 52% | 5.1 | 5.81 | 7.2-5.3 | 3 2. |

# Mike Peluso 1994-1995 Fights

| # | Date | Lg | Game | Opponent | | Out come | Fun | Reviews Messages | Punches (Fo Ag) | |
|---|------|----|----|----------|------|----------|-----|------|---------|---|
| | | | | Name | Ht+/- | Wt+/- | | | | Thrown | Land |
| 1 | Sep 20 | NHL | NJ-NYI | Rich Pilon | ↑4 | ↑9 | Win | 6 | Rev (2) | 12-4 | 6-2 |
| 2 | Jan 25 | NHL | NJ-Buf | Doug Houda | ↑2 | ↑16 | Win | 5.3 | Rev (3) | | |
| 3 | Jan 26 | NHL | NJ-Bos | David Shaw | ↑2 | ↑21 | Win | 6 | Rev (2) | | |
| 4 | Jan 28 | NHL | NJ-Mtl | Lyle Odelein | ↑5 | ↑15 | Draw | 4.5 | Rev (2) | | |
| 5 | Feb 4 | NHL | NJ-Que | Adam Deadmarsh | ↑4 | ↑20 | | | Rev (2) | | |
| 6 | Feb 12 | NHL | NJ-Fla | Scott Mellanby | ↑3 | ↑17 | Win | 5 | Rev (2) | | |

| # | Date | Lg | Game | Opponent Name | Ht+/- | Wt+/- | Outcome | Fun | Reviews Messages | Punches (For) Thrown | Ag) Landed |
|---|------|-----|------|---------------|-------|-------|---------|-----|------------------|-------|-------|
| 7 | Feb 12 | NHL | NJ-Fla | Paul Laus | ↑3 | ↑10 | Win | 5.8 | R(8).M(1) 🖼 | | |
| 8 | Feb 15 | NHL | Wsh-NJ | Rob Pearson | ↑2 | ↑27 | Win | 4.5 | Rev (2) | 6-2 | 4-0 |
| 9 | Feb 17 | NHL | NYI-NJ | Mick Vukota | ↑2 | ↑10 | Draw | 3 | Rev (3) | 3-1 | 1-1 |
| 10 | Feb 18 | NHL | NJ-NYI | Mick Vukota | ↑2 | ↑10 | Draw | 1 | Rev (2) | | |
| 11 | Feb 20 | NHL | NJ-Wsh | Kevin Kaminski | ↑7 | ↑55 | Draw | 4.3 | R(3).M(1) 🖼 | 4-3 | 1-2 |
| 12 | Feb 27 | NHL | Mtl-NJ | Lyle Odelein | ↑5 | ↑15 | Unfair | | R(2).M(1) | | |
| 13 | Mar 2 | NHL | NJ-Bos | Brent Hughes | ↑5 | ↑45 | Win | 4.3 | R(3).M(2) | 5-6 | 2-0 |
| 14 | Mar 2 | NHL | NJ-Bos | Daniel Lacroix | ↑2 | ↑20 | Loss | 3 | R(2).M(1) | | |
| 15 | Mar 8 | NHL | NJ-NYR | Darren Langdon | ↑3 | ↑20 | Win | 5.8 | R(8).M(3) 🖼 | 19-12 | 9-5 |
| 16 | Mar 19 | NHL | Bos-NJ | Jamie Huscroft | ↑2 | ↑15 | TKO Win | 6.8 | R(4).M(1) 🖼 | | |
| 17 | Mar 26 | NHL | NJ-NYI | Mick Vukota | ↑2 | ↑10 | Draw | 4.3 | Rev (3) | | |
| 18 | Mar 29 | NHL | NJ-Ott | Scott Levins 🐾🐾 | | ↑15 | Win | 6.3 | R(6).M(1) 🖼 | | |
| 19 | Apr 12 | NHL | NJ-Wsh | Kevin Kaminski | ↑7 | ↑55 | Unfair | | R(10).M(4) 🖼 | 3-0 | 3-0 |
| 20 | Apr 22 | NHL | Phi-NJ | Shawn Antoski 🐾 | | ↓10 | TKO Loss | 5.7 | R(6).M(1) 🖼 | 3-3 | 2-2 |
| 21 | Apr 28 | NHL | Fla-NJ | Paul Laus | ↑3 | ↑10 | Draw | 3 | Rev (6) | 2-3 | 1-1 |
| 22 | Jun 10 | NHL | Phi-NJ | Kevin Dineen | ↑5 | ↑35 | | | Msg (1) | | |
| | Totals | | | | | | 10-2-6 | | 81 | 57-34 | 29-13 |
| | Average per Fight | | | | ↑3 | ↑20 | 59% | 4.7 | 3.68 | 6.3-3.8 | 3.2-1.4 |

# Mike Peluso 1995-1996 Fights

| # | Date | Lg | Game | Opponent Name | Ht+/- | Wt+/- | Outcome | Fun | Reviews Messages | Punches (For Ag) Thrown | Landed |
|---|------|-----|------|---------------|-------|-------|---------|-----|------------------|-------|-------|
| 1 | Sep | NHL | NYR-NJ | Nick | ↑4 | ↑20 | | | R(1).M(8) | | |

| 23 | Apr 2 | NHL | *NJ*-NYR | Dvorak Shane Churla T2T | ↑3 | ↑25 | Loss | 7.6 | *R(10).M(3)* 🚂 | 11-15 | 4-6 |
|----|-------|-----|----------|-------------------------|-----|------|------|-----|-----------------|-------|-----|
| | | Totals | | | | | 7-7-3 | | 89 | 69-69 | 36-31 |
| | | Average per Fight | | | ↑2 | ↑13 | 52% | 5.2 | 3.87 | 8.6-8.6 | 4.5-3.9 |

# Mike Peluso 1996-1997 Fights

| # | Date | Lg | Game | Opponent | | | Out come | Fun | Reviews Messages | Punches (F Ag) | |
|---|------|-----|------|----------|---|---|----------|-----|------------------|----------------|---|
| | | | | Name | Ht+/- | Wt+/- | | | | Thrown | Land |
| 1 | Sep 16 | NHL | *NJ*-NYR | Darren Langdon | ↑3 | ↑20 | Win | 5 | *R(9).M(3)* 🚂 | 11-6 | 5- |
| 2 | Sep 16 | NHL | *NJ*-NYR | Eric Cairns | ↑2 | ↑18 | Loss | 5.3 | *R(10).M(1)* 🚂 | 6-4 | 1- |
| 3 | Sep 16 | NHL | *NJ*-NYR | Sylvain Blouin | ↑2 | ↑10 | TKO Win | 7.1 | *R(9).M(4)* 🚂 | 13-9 | 6- |
| 4 | Sep 26 | NHL | *NJ*-Det | Darren McCarty | ↑3 | ↑10 | Loss | 6.3 | *Rev (4)* | | |
| 5 | Sep 28 | NHL | NYR-*NJ* | Jeff Beukeboom | ↑1 | ↓5 | Draw | 3 | *Rev (2)* | 4-3 | 0- |
| 6 | Oct 7 | NHL | *NJ*-Phi | Scott Daniels | ↑1 | ↑10 | Win | 5.3 | *Rev (6)* | 11-10 | 6- |
| 7 | Oct 7 | NHL | *NJ*-Phi | Dan Kordic | ↑1 | ↓8 | Loss | 4.6 | *R(7).M(1)* 🚂 | 4-9 | 1- |
| 8 | Oct 19 | NHL | *NJ*-Har | Keith Primeau | ↓1 | ↑5 | TKO Win | 6.8 | *R(7).M(1)* 🚂 | 6-5 | 2- |
| 9 | Oct 29 | NHL | *NJ*-Bos | Trent McCleary | ↑3 | ↑47 | Unfair | | *R(4).M(1)* | 4-0 | 3- |
| 10 | Oct 30 | NHL | NYR-*NJ* | Eric Cairns | ↓2 | ↓18 | Draw | 3.3 | *Rev (4)* | 5-4 | 2- |
| 11 | Nov 7 | NHL | *NJ*-Chi | Jim Cummins | ↑2 | ↑15 | Win | 7 | *R(8).M(1)* 🚂 | 12-12 | 6- |
| 12 | Nov 9 | NHL | NYI-*NJ* | Mick Vukota | ↑2 | ↑10 | Loss | 2.8 | *Rev (4)* | 3-6 | 1- |
| 13 | Nov 19 | NHL | *NJ*-Ott | Phil Crowe | ↑2 | ↑5 | Win | 6.6 | *R(8).M(2)* 🚂 | 8-5 | 4- |
| 14 | Nov 27 | NHL | *StL*-Ana | Warren Rychel | ↑4 | ↑20 | Draw | 3 | *Rev (3)* | | |
| 15 | Dec 1 | NHL | SJ-*StL* | Andrei Nazarov | ↑1 | ↓5 | Win | 5.2 | *R(6).M(1)* 🚂 | 13-3 | 7- |
| 16 | Dec 3 | NHL | *StL*-Tor | Tie Domi | ↑6 | ↑12 | Loss | 2.8 | *Rev (5)* | | |

| # | Date | Lg | Game | Opponent Name | Ht+/- | Wt+/- | Outcome | Fun | Reviews Messages | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 17 | Dec 8 | NHL | *StL*-Edm | **Kelly Buchberger** | ↑2 | ↑25 | Win | 6 | *R(3),M(2)* 🛷 | | |
| 18 | Dec 11 | NHL | *StL*-Dal | **Todd Harvey** 🩸 | ↑4 | ↑15 | Win | 4.8 | *Rev (5)* | 6-5 | 3-... |
| 19 | Dec 21 | NHL | *StL*-Phi | **Karl Dykhuis** | ↑1 | ↑11 | Win | 6.2 | *R(5),M(2)* 🛷 | 17-7 | 9-... |
| 20 | Dec 22 | NHL | LA-*StL* | **Brad Smyth** | ↑4 | ↑25 | Win | 4.3 | *R(4),M(2)* 🛷 | 8-2 | 3-... |
| 21 | Jan 20 | NHL | *StL*-NYI | **Steve Webb** | ↑4 | ↑14 | 🔵TKO Win | 6.3 | *R(4),M(1)* 🛷 | 5-2 | 3-... |
| 22 | Jan 25 | NHL | *StL*-Mtl | **Chris Murray** | ↑4 | ↑16 | Win | 4 | *Rev (3)* | 7-3 | 4-... |
| 23 | Feb 8 | NHL | *StL*-Bos | **Dean Chynoweth** | ↑2 | ↑35 | Win | 6.2 | *R(6),M(1)* 🛷 | | |
| 24 | Feb 23 | NHL | Cal-*StL* | **Todd Simpson** | ↑1 | ↓2 | | | *Update / Review* | | |
| 25 | Feb 27 | NHL | *StL*-Fla | **Paul Laus** | ↑3 | ↑10 | Loss | 3.2 | *R(5),M(2)* 🛷 | 1-11 | 0-... |
| 26 | Mar 13 | NHL | *StL*-LA | **Sean O'Donnell** | ↑1 | ↓9 | Loss | 3 | *R(3),M(4)* 🛷 | 0-5 | 0-... |
| 27 | Apr 1 | NHL | *StL*-Det | **Darren McCarty** | ↑3 | ↑10 | Draw | 5 | *R(5),M(1)* 🛷 | 10-8 | 2-... |
| 28 | Apr 3 | NHL | NYI-*StL* | **Ken Belanger** | | ↑5 | Loss | 7 | *R(8),M(1)* 🛷 | 11-12 | 3-... |
| 29 | Apr 22 | NHL | Det-*StL* | **Jamie Pushor** | ↑1 | ↑7 | Draw | 5.2 | *Rev (5)* | | |
| 30 | Apr 22 | NHL | Det-*StL* | **Slava Kozlov** | ↑6 | ↑33 | Unfair | | *Rev (2)* | 1-N/A | 0-N... |
| | **Totals** | | | | | | **14-8-5** | | **154** | 166-131 | 71 53... |
| | **Average per Fight** | | | | ↑2 | ↑10 | **57%** | 5 | **5.13** | 7.2-6.0 | 3.... 2.4... |

# Mike Peluso 1997-1998 Fights

| # | Date | Lg | Game | Opponent Name | Ht+/- | Wt+/- | Out come | Fun | Reviews Messages | Punches Ag Thrown |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Sep 15 | NHL | Tor-*NYR* | **Kelly Chase** | ↑5 | ↑24 | | | *Update / Review* | |
| 2 | Sep 22 | NHL | *NYR*-Cal | **Todd Simpson** | ↑1 | ↓2 | | | *Update / Review* | |
| 3 | Sep 23 | NHL | *NYR*-SJ | **Marty** | ↑3 | | | | *Update / Review* | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | **McSorley** | | | | | |
| 4 | Oct 3 | NHL | *Col*-*Cal* | **Wade Belak** | ⬇1 | ⬆4 | **Draw** | 4 | *Rev (4)* | |
| 5 | Oct 9 | NHL | NYR-*Cal* | **Ryan VandenBussche** | ⬆4 | ⬆20 | **Draw** | 7 | *R(8).M(2)* ➡️ | 8-9 |
| 6 | Oct 22 | NHL | *Cal*-Buf | **Rob Ray** | ⬆4 | ⬆3 | (TKO) **Win** | 7 | *R(2).M(2)* | |
| 7 | Oct 23 | NHL | *Cal*-Phi | **Luke Richardson** | ⬆1 | ⬆10 | (TKO) **Win** | 7.3 | *R(8).M(1)* ➡️ | 6-4 |
| 8 | Nov 2 | NHL | *Cal*-Phx | **Jim McKenzie** | | ⬇5 | **Loss** | 4 | *Rev (4)* | 6-7 |
| 9 | Nov 10 | NHL | *Cal*-Chi | **Bob Probert** | ⬆1 | ⬆5 | **Draw** | 3 | *R(1).M(1)* | 3-0 |
| 10 | Nov 20 | NHL | *Cal*-Fla | **Paul Laus** 🐎 | ⬆3 | ⬆10 | **Win** | 3.5 | *R(2).M(1)* | |
| 11 | Nov 22 | NHL | *Cal*-TB | **Louie DeBrusk** | ⬆3 | | **Win** | 5 | *Rev (1)* | |
| 12 | Nov 23 | NHL | *Cal*-Car | **Stu Grimson** | ⬇1 | ⬇5 | **Draw** | 4.3 | *R(3).M(3)* | |
| **Totals** | | | | | | | **4-1-4** | 33 | | 23-20 |
| **Average per Fight** | | | | | ⬆2 | ⬆5 | **60%** | 5 | 2.75 | 5.8-5.0 |

**K.    VIDEOTAPE EVIDENCE OF HEAD INJURIES SUSTAINED BY PELUSO IN HOCKEY FIGHTS *AFTER* THE NEUROLOGICAL REPORT ISSUES:**

47.    Videotape Evidence of Head Injuries Sustained in Hockey Fights *After* the

Neurological Report Is Given to Defendants:

      **a.**    12/23/1993, Newark, New Jersey (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

        **i.**    https://youtu.be/ZaCxi5pQJvg

      **b.**    1/19/1994, Winnipeg, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

        **i.**    https://youtu.be/5EgGWrsHdPw

      **c.**    1/26/1994, Edmonton, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

        **i.**    https://youtu.be/5EgGWrsHdPw

      **d.**    2/2/1994, Edmonton, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

i.  **https://youtu.be/MML72I-RGA8**

e.  **11/02/1995, San Jose, California (***after Defendants are told Mr. Peluso can no longer sustain head hits***)**

i.  **https://m.youtube.com/watch?v=L9TUylAGAYM**

f.  **03/13/1997, Los Angeles, California (***after Defendants are told Mr. Peluso can no longer sustain head hits***)**

i.  **https://www.youtube.com/watch?v=x7vxcdSlTOk**

g.  **09/23/1997, San Jose, California (***after Defendants are told Mr. Peluso can no longer sustain head hits***)**

h.  **11/27/1996, Anaheim, California, 3pd 14:26**

48.     On or about September 4, 2012, Peluso filed a California workers' compensation claim for cumulative trauma injuries. Chubb, as an insurance carrier for the Devils, was a party to the action.

49.     Chubb was again provided Peluso's team and medical records by the Devils. However, knowing that the information contained in Dr. Ruderman's report and other records could result in a 100% finding of permanent disability, thus entitling Peluso to significant lifelong benefits, Chubb intentionally withheld the documents despite their obligation to produce them in discovery and through subpoena.

50.     Chubb's intentional concealment of the documents was extreme and outrageous, denying Peluso a fair adjudication of his workers' compensation claim, as well as denying treating medical professionals critical information crucial to evaluating his disability and determining treatment of his conditions.

51.    Peluso relied, to his detriment, on the Team Defendants' statements and misrepresentations that he was fit to return to play and was unaware of his extreme risk of further neurological injury if he were to sustain further head trauma.

## IV.    RESULTS OF WRONGFUL WITHHOLDING OF MEDICAL DOCUMENTS

**L.    05/02/2016: NEUROPSYCHOLOGIST FINDS THAT MR. PELUSO SUFFERED TBIS THAT RESULTED IN HIS SEIZURES AND MAJOR NEUROCOGNITIVE DISORDER AND THAT HE HAS SIGNIFICANT NEUROPSYCHOLOGICAL DYSFUNCTION THAT IS PERMANENT AND LIKELY TO INCREASE. [15]**

52.    Dr. Kerri J. Lamberty reviewed over 1500 pages of medical records and spent 6 hours in face–to–face evaluation of Mr. Peluso.[16]   The results showed that Mr. Peluso's neurological condition is rapidly deteriorating. Dr. Lamberty made findings and recommendations as a result of Mr. Peluso's brain injuries that no doctor in California had made in his workers compensation case only 2 years prior.   These include, for example: "recommend[ing] referral to a traumatic brain injury program," "strongly recommend[ing] that Mr. Peluso be referred for psychiatric and psychological evaluation and treatment," and indicating that Mr. Peluso had significant problems obtaining employment as a result of his condition.

53.    Neuropsychologist, Dr. Kerri J. Lamberty found that Mr. Peluso:

> [S]ustained a number of concussions and sub-concussive blows throughout his hockey career between 1989 and 1997. During that time, he began experiencing seizures following a traumatic brain injury (TBI) occurring in 1993….

---

[15] (*See* "05/02/2016 Report of Dr. Kerri J. Lamberty, Neuropsychologist")
[16] Dr. Lamberty's Psychometrist also conducted a 3.5 face–to–face evaluation of the Mr. Peluso.

> [T]here is indication of significant acquired neuropsychological dysfunction…. These deficits are considered to be permanent and will likely increase in the future.[17]

54.     Dr. Lamberty diagnosed Mr. Peluso with:[18]

- **Major Neurocognitive disorder secondary to traumatic brain injury;**
- **Major Depression, Recurrent, moderate to severe; and**
- **Anxiety, NOS.**

**M.      05/23/2016: Mr. Peluso's Neurologist Who Has Treated Him For Five Years Finds That Mr. Peluso Has Dementia And His Dementia Is Caused From His Head Injuries In The NHL.[19]**

55.     Dr. Steven D. Stein, M.D., is Mr. Peluso's personal Neurologist of 6 years. Dr. Stein reviewed Dr. Lamberty's report and then analyzed her findings based on his six years of evaluations with the Mr. Peluso and issued a report stating that the Mr. Peluso had signs of early onset Dementia, a significant mood disorder that was preventing him from working, and Anxiety NOS:

> I am a neurologist who has been involved in the care of Mr. Mike Peluso since January 2011. Mr. Peluso has a seizure disorder as well as a chronic cognitive and mood disorder. In my opinion, both of these conditions are, more likely than not, related to his career as a professional hockey player. ***It is my understanding he has experienced numerous, significant head injuries in the course of his professional hockey career. He recently underwent neuropsychological testing by Dr. Kerri Lamberty. The result of this testing revealed major neurocognitive disorder as well as evidence of major depression and anxiety.*** The cognitive disorder is of a degree that it will impact day-today activities. ***In my opinion, these deficits***

---

[17] (*Id.*)
[18] (*Id.*)
[19] (*See* "5/23/16 Report of Dr. Steven D. Stein, M.D. of the Minneapolis Clinic of Neurology") (emphasis added)

> ***would be consistent with a developing pattern of dementia.***
> It is also well established in the neurology community that
> repeated head trauma may also be responsible for significant
> mood disorders, of the type that Mike is experiencing.[20]

### N.    5/12/2016:  NEWLY DISCOVERED EVIDENCE REVEALED

56.    In May of 2016, Mr. Peluso's counsel in his worker's compensation case was provided with never before produced documents in the worker's compensation case.  The documents included the 2/21/94 Ruderman Report and the 12/18/93 New Jersey Devils Team Medical Record.  The evidence revealed that Dr. Ruderman sent Defendants a clear warning that Mr. Peluso was at risk of long term neurological problems and a Chronic Seizure Disorder if Defendants allowed Mr. Peluso to sustain any additional hits to his head.[21]

## V.    WRONGFULLY WITHHELD DOCUMENTS CHANGE DOCTOR'S OPINIONS DRAMATICALLY

57.    ***Revelation of the Documents Changed Everything***. ALL of Mr. Peluso's doctors and experts found the newly discovered evidence to have dramatically influenced and even altered their opinions.

58.    Under Table 13–5 of the Clinical Dementia Rating, the neurologist hired by Chubb and the Team Defendants (Dr. Glatstein) in Mr. Peluso's workers compensation case had made no findings regarding dementia and ***in fact***, only gave Mr. Peluso a very minimal neurological impairment. The neurologist found that Mr. Peluso's seizure was not

---

[20] (*Id.*)
[21] *See* 02/21/1994 Report of Dr. Marvin Ruderman of the Neurology Associates of New Jersey

caused by head injuries stating: Mr. Peluso's "seizure disorder is non–industrial...."[22] Further, the Defense neurologist stated: "The remaining aggravation of the seizure disorder would seem to be due to either non–compliance of medication or alcohol usage."

59.    Further, the Defense neurologist in his workers compensation case stated that Mr. Peluso "was never diagnosed as having a concussion and was never completely taken out of play because of a head injury."

60.    In addressing the significance of the new Reports on the Defense neurologist findings, Dr. Kenneth Nudleman (Mr. Peluso's Neurologist) stated: "As noted, it was my opinion that the Defense neurologist substantially underrated cognitive impairment. This is now held up with multiple examiners including neuropsychological testing and a neurologist from Minneapolis, also concluding a substantial impairment."

61.    Although Peluso's qualified medical evaluators ("AQME")s[23] had been able to link Mr. Peluso's chronic seizure condition to hockey, they did not link the entire seizure condition to the 12/18/93 event until they reviewed the records and additionally noted the significance of the additional documents on their findings:  AQME Nudleman changed his causation and apportionment regarding Mr. Peluso's seizure disorder from 100% to cumulative trauma to 50% due to "the specific incident with New Jersey Devils and 50% from cumulative trauma." Meaning, that Mr. Peluso's total permanent seizure condition was determined to be in large part a direct result of the concussion occurring on 12/18/93. Additionally, additional impairment was given.

---

[22] In parenthesis Defense QME Glatstein states "(not due to playing with the Calgary Flames)."

[23] AQME Ortho – Michael Einbund and AQME Neuro – Kenneth Nudleman.

### A. IME - Psychoanalyst Reports, Dr. Leighton Reynolds, 07/15/2016; 08/08/2016

62. Dr. Reynolds is a certified Psychoanalyst who **has extensive experience dealing with people with traumatic brain injuries**. He has a doctorate in Psychoanalytic Studies – which includes Psychoanalysis, Neuroscience, and Psychology and has **19 years of doctoral research**.

63. Based on the previously unproduced Records of the New Jersey Devils which showed that Mr. Peluso's seizure disorder was directly caused by his head injury and that additional hits to his head would cause a chronic seizure disorder, Mr. Peluso's Counsel concluded that Mr. Peluso may be a candidate for a finding under LC 4662(a)(4) – Injury to the Brain Resulting in Permanent Mental Incapacity.

64. As stated above, Dr. Reynolds has several years of experience working with patients with Traumatic Brain Injuries and in addition to conducting at least two examinations, Dr. Reynolds works with his patients on an ongoing basis – some for the rest of their lives – to help them manage their brain injury limitations. Dr. Reynolds has in fact conducted several visits with Mr. Peluso and is continuing to do so on an ongoing basis.

65. Dr. Reynolds found that Mr. Peluso had an initial Traumatic Brain Injury, that was industrial, and is "totally disabling under [Cal.] LC 4662(a)(4)."

66. Further Dr. Reynolds found that Mr. Peluso has suffered extreme emotional distress as a result of finding out about Defendants' actions of withholding his medical documents in his worker's compensation case.

67.    Dr. Reynolds found that Mr. Peluso suffered new injuries and aggravation as a result of Defendant's actions.

68.    Dr. Reynolds also found that Mr. Peluso's neurocognitive impairment continues to increase daily as a result of Defendants' actions.

## B.    FORENSIC VOCATIONAL EVALUATION REPORTS 6/29/016; 08/08/2016

69.    Dr. Luis Mas is a Qualified Vocational Forensic Evaluator who has conducted vocational evaluations for several years in California. Based on the previously unproduced Records of the New Jersey Devils and Mr. Peluso's inability to work, Dr. Mas found him 100% permanently disabled.

70.    Despite multiple discovery requests in the worker's compensation case, the 12/18/93 Report was not produced by Defendants until May 2016.

71.    Despite multiple discovery requests, the 2/21/94 Report has never been produced.

72.    Had the medical reports been produced to Mr. Peluso by Defendants in 1994, Mr. Peluso could have taken measures at that point to protect himself from lifelong brain damage.

73.    Had the medical reports been produced to Mr. Peluso by Defendants in 2012, 2013, or 2015, when he requested all of his medical records, Mr. Peluso could have taken measures then to protect himself from lifelong brain damage and a lifetime of horribly debilitating mood, behavioral and cognitive problems.

## VI.    DISCOVERY VIOLATIONS IN CALIFORNIA

74.    On **11/28/12**, Mr. Peluso filed a cumulative trauma case in California alleging injuries to multiple parts of his body and head.   Chubb Insurance company denied his case.

75.    On **11/28/2012**, Mr. Peluso's counsel served all Defendants with a continuing Request for Production of Documents that required medical records be produced in 30 days (10 days according to statute).

76.    On **12/20/12**, after receiving no response within 10 days, Mr. Peluso's Counsel subpoenaed records of the New Jersey Devils and other Defendants.

77.    On **8/1/13**, Mr. Peluso's counsel still had not received a response so Mr. Peluso corresponded with counsel for the New Jersey Devils and Chubb Counsel stated that they were requesting records and would forward upon receipt.

78.    On **8/9/13**, Mr. Peluso's counsel received a notification letter from its subpoena company that the New Jersey Devils and other Defendants "**failed to comply to our out of state subpoena and is not responding to our emails.**"

79.    On **12/23/13**, counsel for the New Jersey Devils/Chubb wrote and stated it was in the process of obtaining records and informed Mr. Peluso's counsel that "**there is no need to subpoena these records.**"

80.    On **11/25/14**, Mr. Peluso's counsel still had not received any documents from the New Jersey Devils. However, counsel for the New Jersey Devils wrote and stated that its **"discovery was complete" and it was prepared to "proceed forward on all issues**

**on this matter."** This was an implicit representation that the New Jersey Devils had no documents and that a diligent search had been conducted to confirm such representation.

81.     On **2/20/15**, Mr. Peluso's counsel still had not received any documents from the New Jersey Devils. However, counsel for the New Jersey Devils wrote: "At this time, our office is filing a [Declaration of Readiness to Proceed for an MSC] … as we have completed all discovery." This was still another implicit representation that the New Jersey Devils had no responsive documents.

82.     On **6/29/15** – *two years and seven months after Mr. Peluso's Request for Production of Records* – the New Jersey Devils finally produced medical records and documents. As stated earlier, two key medical records were omitted. The medical records showed Defendants had a duty to protect Mr. Peluso and did not.

*"Due to defendant New Jersey Devils' dereliction of its discovery obligations…. the New Jersey Devils 'wrongfully withheld'" key medical records.[24]*

83.     On 11/15/16, the California Workers Compensation Appeals Board held that Defendants 1) engaged in serious discovery violations and 2) "wrongfully withheld" documents.  The Court stated:[25]

> The New Jersey Devils Records are essential to this analysis. These documents were responsive to valid discovery requests propounded in this case but were inexplicably not produced by defendant New Jersey Devils….  Due to defendant New Jersey Devils' dereliction of its discovery obligations, these documents clearly 'were not available' to [Mr. Peluso] prior to the close of discovery.
>
> [T]he New Jersey Devils wrongfully withheld … [medical

---

[24] *Peluso v. New Jersey Devils; Chubb Ins.; et al*; ADJ8643967 (Order Granting Mr. Peluso's Removal) found at https://www.scribd.com/document/334885183/Peluso-decision
[25] *Id*.

documents]….

84.    On multiple occasions counsel for Defendants have denied that Mr. Peluso's condition is related to hockey – even though they have in had their possession a medical Report stating definitively that Mr. Peluso's condition is directly related to hockey:

85.    On 1/20/17, in an article entitled "National Hockey League insurer Chubb hits back after sport star's accusations" Attorneys for Chubb reportedly stated:  "Peluso ha[s] not offered any medical evidence to support the allegations of brain damage and diagnosis of dementia."

86.    On 7/11/16, Counsel for Chubb, Devils, and Blues admitted that the 2/14/94 Medical Report should have placed them on notice that further head injuries would lead to Mr. Peluso's current condition.   Counsel for Chubb, Devils, and Blues stated: "[The 2/14/94 Report] clearly shows the [Mr. Peluso] was put on notice and aware of possible recurring concussions…." If Defendants are taking the position that Mr. Peluso – who was not copied on the 2/14/94 Report, not provided a copy of the 2/14/94 Report, and had no memory of seeing a neurologist on 2/14/94 – was placed on notice pursuant to the 2/14/94 Report, then such a statement serves as an admission that Defendants were on notice as of 2/14/94.

87.    On 1/18/17, Defendant Chubb was reported as stating: "[T]he majority of Peluso's documented seizures were brought on by a "lack of sleep, partying, dehydration, binge drinking, and failure to take medication".

88.     Had Defendants accepted Mr. Peluso's claim and provided treatment, Mr. Peluso's injuries would not have continued to worsen.

89.     Defendants demonstrated callous indifference to catastrophic consequences of its actions.

90.     Defendant Chubb additionally demonstrated callous indifference of the consequences of its failure to produce documents including its denials, delays, inaction and neglect.

91.     Defendant Chubb did not conduct a further investigation in light of the new evidence which affected the benefits due to Peluso.

## VII.    FURTHER ALLEGATIONS

92.     Team Defendants are members of the NHL. The NHL along with Team Defendants decide league wide policy and rules for all players, including Mr. Peluso.

93.     Team Defendants and the NHL are entrusted by players to determine, among other things, issues of player safety, required protective equipment, and rules of play.

94.     Defendants and the NHL are charged with providing healthcare to Peluso.

95.     Defendants are responsible for "offering aid in advance and making whatever investigation is necessary to determine the … [medical] needs of the employee."[26]

96.     Team Defendants and the NHL have long promoted and profited billions of dollars from their product by emphasizing the violence allowed by the league, including

---

[26] Romano v. Kroger Co., 2013 Cal. Wrk. Comp. P.D. LEXIS 125 (Cal. Wrk. Comp. P.D. 2013).

fist fights, explosive body checks, and brawls between large groups of players on opposing teams.

97.     Despite having evidence and knowledge that fighting would most likely result in severe neurological injuries, Defendants and the NHL allowed, encouraged, and required Peluso to fight as a condition of his employment.

98.     In fact, Defendants designated and played "theme songs" to encourage and celebrate brutal fist fights that Mr. Peluso was required to engage in, e.g., "Wild Thing"[27] – which was a song that exemplified Peluso's physicality and reckless abandon and – "The Godfather"[28]

99.     Peluso received blows to his head every game and most practices. The repetitive head trauma caused irreparable harm to his brain which has resulted in numerous neurological illnesses.

100.     Defendants, have long known that professional hockey players are exposed to repeated head trauma and the resulting brain damage but nevertheless did not inform Peluso, did not protect him, encouraged him to continue working, and concealed critical information from him.

101.     Chubb, which provided workers' compensation insurance at relevant times relating to this action, intentionally or negligently suppressed information in order to

---

[27] https://www.todaysslapshot.com/nhl-east/new-jersey-devils/bobby-farnham-is-the-devils-wild-thing/; https://youtu.be/FWb6hnCKfSM

[28] http://articles.chicagotribune.com/1995-04-30/features/9504300353_1_organ-chicago-stadium-fans

systematically deny Peluso of his full rights to timely obtain treatment and timely compensation for his injuries.

102.   Chubb did not investigate nor administer Peluso's claim in good faith and did not conduct a further investigation after receiving the additional medical documents.

103.   The conduct of Defendants resulted in injury to Peluso and was done with malice, fraud, gross negligence/oppression, intent, and in a conscious and willful disregard of Peluso's rights and safety. Defendants, individually, through their officers and directors and/or managing agents, authorized, directed, and conducted or ratified each act resulting in Peluso's harm.

104.   As a result of Defendants' conduct and the harm caused, Peluso brings this instant claim seeking damages, against Defendants, including punitive damages under California law.

## VIII.    TOLLING OF THE STATUTES OF LIMITATIONS.

105.   Peluso could not have discovered through the exercise of reasonable diligence, did not know, and could not have known that had Defendants committed wrongdoing, including but not limited to: (i) subjecting and continuing to subject Peluso and to the imminent risk of head trauma and despite their knowledge that such trauma would have devastating and long-term negative health consequences; (ii) failing to warn Peluso of the risks and consequences of head trauma; (iii) concealing material medical information from Peluso which, if disclosed, would have prevented his severe neurological

injuries; and (iv) failing to produce the critical information in order to deny him his full measure of rights and preventing proper medical care.

106.    Defendants affirmatively concealed its wrongdoings from Peluso and withheld critical information and documents. Peluso did not have this knowledge and could not have had this knowledge through reasonable diligence.

107.    Accordingly, all applicable statutes of limitations have been suspended with respect to any claims by Peluso. Moreover, Defendants are estopped from relying on any statutes of limitations defenses of this action.

## IX.    EXCLUSIVE WORKERS COMPENSATION REMEDIES ARE INAPPLICABLE

108.    Defendants actions are not subject to the exclusive remedy because Defendants actions consist of intentional torts or other reprehensible acts which go beyond the normal role of an insurer or employer in a compensation scheme and frustrate objectives of California worker's compensation law.

109.    The fraudulent and intentional acts of Defendants detailed herein clearly fall outside the statutory scheme of California's workers' compensation framework. Defendants, through their intentional and malicious conduct, acted far outside any contemplated range of conduct proper for an employer and insurer. Accordingly, their deceitful and reprehensible conduct forfeits any immunity that may be asserted by Defendants.

110.    As detailed herein, Defendants had a duty to disclose and fraudulently concealed information from Mr. Peluso the existence of his injury and thus the dual capacity doctrine is applicable.

## *COUNT I*

### A. BATTERY – AGAINST TEAM DEFENDANTS

111.    Mr. Peluso realleges the foregoing paragraphs as if fully set forth herein.

112.    Team Defendants, with knowledge that Mr. Peluso was injured and likely to suffer severe neurological injuries if he were to sustain any further head trauma, consistently required Mr. Peluso to subject himself to circumstances where such head trauma was certain to occur.

113.    Team Defendants further intended this trauma to occur by encouraging Mr. Peluso as a normal course of employment to inflict and sustain physical trauma through violent body checks, fist fights.

114.    Defendants withheld material information regarding Mr. Peluso's condition and his likelihood of worsening his condition by sustaining further brain damage and seizures through head injuries.

115.    Had Defendants not concealed the truth of his injury and the likelihood of sustaining further head trauma, Mr. Peluso would not have continued subjecting himself to further head trauma.

116.    As a direct and proximate result of Team Defendants' intentional physical harm, Peluso suffered and will continue to suffer injuries.

117.    As a result, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT II*

**A. BATTERY| AGGRAVATION OF INJURY – AGAINST ALL DEFENDANTS**

118.    Mr. Peluso realleges the foregoing paragraphs as if fully set forth herein.

119.    Mr. Peluso had suffered from the aforementioned neurological injuries caused by Defendants at the onset of his workers' compensation claim.

120.    Defendants, as detailed in this complaint, fraudulently concealed documents/material information throughout Peluso's workers' compensation claim in an attempt to delay and deny him his full measure of rights.

121.    Unsurprisingly, as a result of Defendants' conduct within Mr. Peluso's workers' compensation claim, his existing injuries were made substantially worse. In fact, Mr. Peluso has suffered multiple grand mal seizures caused by the stress and anguish relating to the protracted litigation.

122.    Had Defendants revealed to him his injury in 1994, Mr. Peluso could have taken measures to stop or slow the rate of deterioration of his brain.

123.    Had Defendants revealed to him his injury in 2012 when Mr. Peluso first requested his medical documents, Mr. Peluso could have taken measures to stop or slow the rate of deterioration of his brain.

124.    Had Defendants revealed to him his injury in 2013, Defendants would not have denied his worker's compensation case.

125.    Had Defendants adhered to their obligation to review claims upon receipt of new medical evidence, Defendants would have accepted Mr. Peluso's claim and Mr. Peluso's could have begun slowing or stopping the acceleration of his brain injury.

126.    Mr. Peluso was likely to settle his workers compensation case without requiring health care for his injuries because Defendants represented to him that his injuries were not industrial and thus Defendants intentionally mislead him so he would settle his claim for a small amount without health care or dismiss his claim entirely.

127.    Defendants actions are representative of a course of conduct normally employed in Mr. Peluso's case.

128.    As a direct and proximate result of Defendants' conduct, Mr. Peluso's injuries have been, and continue to be, aggravated.

129.    As a result, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT III*

**A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

130.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

131.    As detailed herein, Defendants knew that Peluso was at substantial risk of severe neurological harm if he were to sustain any further head trauma following his first grand mal seizure.

132.    Defendants fraudulently concealed this information from Peluso and, with this knowledge in hand, intentionally or recklessly required him to resume his duties as an enforcer and encouraged him to continue fighting.

133.    Defendants actions, by failing to inform Peluso that he was likely to suffer severe physical harm if he continued his hockey career and intentionally encouraging Peluso to perform duties that would likely result in severe injuries and potentially death was extreme, outrageous, and intolerable in a civilized society.

134.    Defendants failed to protect Peluso or provide a safe working environment after they knew he was injured.

135.    As a direct and proximate result of Defendants' conduct, Peluso suffered severe emotional distress including, but not limited to, severe depression and anxiety.

136.    As a result, Peluso is entitled to damage and all other relief allowed by law.

## *COUNT IV*

**A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – CALIFORNIA LAW**

137.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

138.    Defendants, each of them, are parties to Peluso's California workers' compensation claim. Throughout their participation in his claim before the California WCAB, Defendants intentionally withheld medical and employment records that were critical to determining the true nature of Peluso's medical condition and required future care.

139.    Instead, Defendants intentionally suppressed this information in order to deny Peluso his rightful compensation and costly future medical treatment.

140.   Defendants' deliberate attempt to deny Peluso medical care and compensation afforded to him by law was extreme, outrageous, and intolerable in a civilized society.

141.   As a direct and proximate result of Defendants' conduct, Peluso suffered severe emotional distress including, but not limited to, severe depression and anxiety.

142.   As a direct and proximate result of Defendants' conduct, Peluso's current medical condition was aggravated resulting in additional injury.

143.   As a result, Peluso is entitled to damage and all other relief allowed by law.

## *COUNT V*

**A. FRAUD – AGAINST ALL DEFENDANTS**

144.   Peluso realleges the foregoing paragraphs as if fully set forth herein.

145.   Team Defendants made fraudulent representations to Peluso in order to continue profiting from his services.

146.   Team Defendants falsely told Peluso that he was fit to continue is professional hockey career safely.

147.   Defendant, Devils also falsely stated that Peluso's seizure was a result of dehydration.

148.   Team Defendants also fraudulently represented to Peluso the risks associated with continuing his professional hockey career.

149.   Defendants, on numerous occasions, fraudulently represented to Peluso and the WCAB that they did not have Ruderman's report demonstrating that Peluso had

suffered a grand mal seizure as a result of a concussion he sustained during a game and that he was at risk of further neurological injuries if he sustained any more head trauma.

150.    Defendants knew this to be false as demonstrated by their knowledge and possession of Ruderman's report dated February 21, 1994, stating that Peluso was at excessive risk of additional seizures if he sustained further head trauma and the likelihood that such trauma would occur.

151.    Defendants intended Peluso rely on their false statements so to induce him into continuing his playing career and to deny him of his full rights and compensation.

152.    Peluso reasonably relied on these false representations as they were made by his employers, their medical staff, the NHL, and a treating medical professional who all were entrusted with his physical wellbeing and safety, or were made pursuant to an order of the WCAB.

153.    Peluso also justifiably relied on the Defendants' misrepresentations to his detriment which resulted in significant physical injuries and denied him proper medical treatment.

154.    As a direct and proximate result, Peluso has suffered significant harm as a result of these false representation by Defendants.

155.    The actions of Defendants were reprehensible. They deliberately misrepresented Peluso's medical condition to him, suppressed and denied the existence of critical medical records and fraudulently represented his risk of sustaining further neurological injuries. Team Defendants further misrepresented the true risk of continuing his career as a professional hockey player. Defendants' conduct was done with oppression,

fraud, and malice, and with a conscious disregard for Peluso's rights. Accordingly, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT VI*

### A. Fraudulent Concealment – Against All Defendants

156.   Peluso realleges the foregoing paragraphs as if fully set forth herein.

157.   Peluso suffered significant neurological, psychological and other physical injuries during his career as a professional hockey player. Peluso, as a result of Defendants' fraudulent concealment, also suffered significant harm by being denied proper and complete medical treatment and compensation.

158.   Peluso did not, and could not have known that suffered a significant neurological injury and was at severe risk further neurological injuries if he sustained any additional trauma to the head. Peluso also did not know the true risks of sustaining head trauma if he were to continue his career as a professional hockey player.

159.   Defendants, each of them, knowingly and fraudulently concealed material information regarding Peluso's injuries as a professional hockey player as well as his heightened risk of neurological injuries throughout his career.

160.   Team Defendants further knew and fraudulently concealed the likelihood of head trauma and long term injuries relating to professional hockey players from Peluso.

161.   Chubb intentionally concealed the aforementioned information from Peluso throughout his career and during proceedings before the WCAB despite its obligation to provide such information through discovery.

162.    Defendants committed several discovery violations.

163.    Defendants intended to deceive Peluso by concealing the aforementioned information in order to continue profiting from his career and by denying him proper compensation for his injuries and medical care.

164.    Peluso reasonably relied on Defendants' deception/fraudulent concealment and his reliance on the fraudulently concealed information was a substantial factor in his harm.

165.    Through the conduct described herein, Defendants concealed material facts and information with the intent to deceive and defraud, which caused Peluso the harm referenced above.

166.    Defendants were aware that Peluso would rely, and did in fact rely, on their silence and fraudulent misrepresentations regarding his medical condition and harm suffered during his NHL career.

167.    As a direct and proximate result of the Defendants' fraudulent conduct Peluso suffered injuries.

168.    As a direct and proximate result of the Defendants' fraudulent conduct Peluso's injuries were aggravated.

169.    Defendants' fraudulent concealment was done with oppression, fraud, and malice, and with a conscious disregard for Peluso's rights.

170.    As a result, Peluso is entitled to damage and all other relief allowed by law.

# *COUNT VII*

### A. FRAUDULENT MISREPRESENTATION

171. Mr. Peluso realleges the foregoing paragraphs as if fully set forth herein.

172. Defendants misrepresented to Mr. Peluso that he did not suffer his initial seizure as a result of the head trauma he sustained while fighting at their direction. Defendants further misrepresented the nature of his injury by informing him in seizure was a result of dehydration and failing to inform him that he had sustained a concussion. As a result, Defendants also falsely stated that Mr. Peluso did not require any further medical care for this injury or that he was entitled to such medical care and compensation.

173. These representations to Mr. Peluso were clearly false and Defendants could not have possibly believed these representations to be reasonably true with the report from Dr. Ruderman and Mr. Peluso's team records in their possession.

174. Mr. Peluso reasonably relied on Defendants' representations because they were charged with directing and controlling his medical care.

175. As a direct and proximate result of Defendants' false representations, Peluso suffered has and will continue to suffer injuries.

176. Mr. Peluso's reliance of Defendants' representations was a substantial factor in his harm as he was denied timely medical care and, to the extent he did receive medical treatment afterwards, Mr. Peluso's doctors lacked all the necessary information to properly administer treatment.

177. As a result, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT VIII*

**A. SPOLIATION OF EVIDENCE**

178.    Mr. Peluso realleges the foregoing paragraphs as if fully set forth herein.

179.    Defendants, after receiving the 2/21/94 Ruderman's report and with knowledge that Mr. Peluso would likely suffer severe neurological injuries before his playing career was over, anticipated that Mr. Peluso would seek compensation for his injuries and litigate his claims. Mr. Peluso did in fact ultimately seek compensation through his California's workers' compensation claim.

180.    Defendants did not provide any medical documents to Mr. Peluso related to his 1993 hospitalization, his 1994 seizure, or any documents or tests related to his 1994 Neurological visit because Defendants knew that such documents would increase their liability.

181.    Team Defendants' efforts to market and sell violence in the sport of hockey and, in that effort, conceal the true dangers and likelihood of head trauma was also likely to result in litigation. Unsurprisingly, concussion cases against the NHL and its members are now ongoing.

182.    Defendants knew that the aforementioned litigation was likely to occur and began their course of deceit with Mr. Peluso as they attempted to hide the very fact that he suffered a severe head injury during the course of his employment.

183.    In anticipation of the potential claims and lawsuits that could arise from their conduct towards Mr. Peluso, Defendants intentionally destroyed, discarded, or otherwise

spoiled evidence in the form of medical reports, team records, and company communications. Defendants took such action with hopes to diminishing or defeating the inevitable claims brought by Mr. Peluso.

184.    There is no telling what evidence how many records have been lost that would have allowed Mr. Peluso to receive a fair and prompt resolution to his claim. Instead, final adjudication of Mr. Peluso's claim for compensation, as well as his entitled medical care, have been consistently delayed.

185.    As a direct and proximate result of Defendants' conduct, Peluso suffered has and will continue to suffer injuries.

186.    As a result, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT IX*

### A. FRAUDULENT CONCEALMENT OF INJURY IN CALIFORNIA (CAL. LAB. CODE SEC 3602(B)(2)) – AGAINST TEAM DEFENDANTS

187.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

188.    Peluso suffered significant neurological, psychological and other physical injuries during his career as a professional hockey player.

189.    Team Defendants knew Peluso suffered significant injuries arising from his occupation as a professional hockey player. Specifically, they knew Peluso suffered a grand mal seizure due to a concussion he suffered during the course of a game. Team Defendants also knew that Peluso was at severe risk of further seizures and neurological harm if he were to sustain any further trauma to the head.

190.    Team Defendants concealed this significant injury as well as significant medical information related thereto from Peluso.

191.    As a result of their concealment of this information, Peluso's injuries were made significantly worse, resulting in numerous neurological illnesses including eight additional grand mal seizures, dementia, chronic seizure disorder, major neurocognitive disorder, significant neuropsychological dysfunction, and severe depression.

192.    As a direct and proximate result of the Defendants' fraudulent conduct Peluso's injuries were aggravated.

193.    As a result, Peluso is entitled to damage and all other relief allowed by law.

## *COUNT X*

**A. CIVIL CONSPIRACY – AGAINST ALL DEFENDANTS**

194.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

195.    Defendants were each aware, agreed, and assisting the others plan to fraudulently misrepresent and conceal Ruderman's report dated February 21, 1994, and the information contained therein.

196.    Team Defendants were also aware of the severe risk of long term head injuries for professional hockey players, as well as the specific extreme risk to Peluso.

197.    Defendants, each of them, conspired with each other and planned to fraudulently misrepresent and conceal this critical information from Peluso in order to profit from its suppression.

198.    Defendants' aided and assisted one another in their attempt to fraudulently misrepresent and conceal critical information from Peluso throughout his career and workers' compensation process.

199.    Defendants' conspiracy to conceal material information from Peluso and aid each other in its suppression was done with oppression, fraud, and malice, and with a conscious disregard for Peluso's rights.

200.    As a direct and proximate result of Defendants' conspiracy to fraudulently suppress this information, Peluso has and will continue to suffer injuries.

201.    As a result, Peluso is entitled to damage and all other relief allowed by law.

## *COUNT XI*

### A. BAD FAITH – AGAINST CHUBB

202.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

203.    Chubb, as the insurer responsible for workers compensation benefits to Peluso, has an implied obligation of good faith and fair dealing and must give at least as much consideration to the interests of the insured as it gives to its own interests.

204.    Chubb in bad faith breached this implied obligation of good faith and fair dealing by, unreasonably and without proper cause, acting in a manner that deprived Peluso of the benefits of the workers compensation policy and did not engage in further investigation upon receipt of new documents.

205.    Specifically, Chubb provided workers compensation benefits for Peluso while he was employed with the Devils.

206.    Through Chubb's regular course of business, they received and had in its possession Ruderman's report soon after the injury occurred.

207.    Upon Chubb's receipt of Peluso's medical records, Chubb intentionally concealed the documents and affirmatively denied their existence in contravention of California law.

208.    Chubb knew that the information contained in the aforementioned documents would significantly increase its exposure and obligations to Peluso, including a finding of the California WCAB of 100% total disability.

209.    As a result, Chubb maliciously, fraudulently, and intentionally concealed the documents and refused to produce this damning information through discovery before the California WCAB in order to deny and/or diminish Peluso's claim for benefits.

210.    Chubb's bad faith actions were done with oppression, fraud, and malice, and with a conscious disregard for Peluso's rights.

211.    As a direct and proximate result of the Defendants' fraudulent conduct Peluso's injuries were aggravated.

212.    As a result, Peluso is entitled to damage and all other relief allowed by law.

## _COUNT XII_

**A. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

213.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

214.    As previously detailed, Defendants, each of them, had a duty to disclose the true nature of Peluso's injury as well as a duty to warn Peluso of the excessive harm that would follow if he continued with his professional hockey career.

215.    Defendants negligently failed to inform Peluso of his substantial risk of injury if he were to sustain head trauma as well as the likelihood of sustaining such head trauma by continuing his career as professional hockey player.

216.    As a direct and proximate result of Defendants' negligence, Peluso suffered severe emotion distress including, but not limited to, severe depression and anxiety.

217.    Peluso's severe emotion distress has also resulting in, or contributed to, additional grand mal seizures and neurocognitive injuries.

218.    As a direct and proximate result of Defendants' conduct, Peluso's current medical condition was aggravated resulting in additional injury.

219.    As a result, Peluso is entitled to damage and all other relief allowed by law.

## *COUNT XIII*

**A. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – WORKERS COMPENSATION CLAIMS**

220.    Peluso realleges the foregoing paragraphs as if fully set forth herein.

221.    Defendants, each of them, had a legal duty to provide Peluso with the material medical/team records in order for him to receive the proper medical care and fair adjudication of his workers' compensation claim. Defendants beached that duty by

withholding the aforementioned documents and failing to inform Peluso of the true nature of his injuries.

222.    As a direct and proximate result of Defendants' negligent conduct, Peluso suffered severe emotion distress including, but not limited to, severe depression and anxiety.

223.    Peluso's severe emotion distress has also resulting in, or contributed to, additional grand mal seizures and neurocognitive injuries

224.    As a direct and proximate result of Defendants' conduct, Peluso's current medical condition was aggravated resulting in additional injury.

225.    As a result, Peluso is entitled to damages and all other relief allowed by law.

## *COUNT XIV*

**A. GROSS NEGLIGENCE – AGAINST TEAM DEFENDANTS**

226.    Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

227.    Team Defendants, each of them, had a duty to disclose the true nature of Peluso's injury as well as a duty to warn Peluso of the excessive harm that would follow if he continued with his professional hockey career.

228.    Defendants were under, but breached, a continuing duty to disclose the true character, quality, and nature of the after-effects of concussive events, sub-concussive events, and/or brain injuries. Because Defendants concealed the true character, quality, and nature of these injuries, it is estopped from relying on any statute of limitations defense;

229.    Team Defendants each had a duty to take reasonable steps to protect the health and safety of Peluso. They also had a duty to take reasonable steps to prevent Peluso from placing himself at extreme harm.

230.    Team Defendants breached that duty by repeatedly failing to inform Peluso that he was at excessive risk of future injury if he sustained further head trauma.

231.    Team Defendants also breached that duty by failing to take any steps to inform Peluso of the likelihood, risk, and consequences of repeated head trauma that they knew was the likely result if he continued his career as a professional hockey player.

232.    Team Defendants further breached their duties by encouraging Peluso to engage in fights despite their knowledge that doing so would result in irreparable physical harm.

233.    As a direct and proximate result of the breach of their duties, Peluso has and will continue to suffer injuries.

234.    As a result of the foregoing, Peluso has suffered the aforementioned physical injuries, wage loss, loss of earning capacity, medical expenses, and other damages and therefore seek appropriate damages and any other relief authorized by law.

## *COUNT XV*

### A. STRICT PRODUCTS LIABILITY – AGAINST TEAM DEFENDANTS

235.    Peluso realleges the foregoing paragraphs as if fully set forth herein

236.    Team Defendants, as professional hockey clubs, engage in the business of designing, regulating, and selling the sport of professional hockey.

237.    Team Defendants possessed significant scientific research and anecdotal evidence of the likelihood of head trauma associated with their product and its long term negative health effects.

238.    As a result of their research and evidence, Team Defendants knew that their product was unreasonably dangerous to Peluso even when acting within their guidelines and instructions.

239.    Based upon information available to Team Defendants, it was foreseeable that Peluso would likely incur severe injury posed by their product as marketed and presented.

240.    Team Defendants consistently refused or delayed implementing procedures and rules that would drastically reduce the risk of harm associated with their product.

241.    Furthermore, Team Defendants intentionally failed to provide any warnings relating to the dangers of the use of their product despite knowing of the potential risks

242.    As a direct and proximate result of Team Defendants' conduct, Peluso has and will continue to suffer injuries.

243.    Accordingly, Peluso is entitled to damages and all other relief allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michael Peluso, prays for judgment with respect to their Complaint as follows:

1.      With respect to all Counts, granting compensatory, incidental, consequential,

and all other damages allowed by law to Plaintiff;

2.      With respect to all Counts, granting punitive damages under California law

to Plaintiff;

3.      With respect to all Counts, awarding Plaintiff his costs and disbursements in

this action, including reasonable attorneys' fees, to the extent permitted by

law; and

4.      With respect to all counts, granting Plaintiff all other relief allowable at law

or equity.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Dated: April 20, 2017                    Respectfully Submitted,


s/ Shawn D. Stuckey_____
Shawn D. Stuckey (MN State Bar # 0388976)
**ALL SPORTS LAW, LLP**
600 W. Santa Ana Blvd., Ste 790
Santa Ana, CA 92701
stuckey@allsportslaw.com
Phone:  (949) 542-7878
Fax:  (949) 542-9884

*Attorneys for Plaintiff*