UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Peluso,<br><br>                Plaintiff,<br><br>v.<br><br>New Jersey Devils, LLC; St. Louis Blues Hockey Club, L.P.; Chubb Group Holdings, Inc., a/k/a Chubb Group, a/k/a Chubb Group of Insurance Companies, a/k/a Chubb Insurance Group, a/k/a Chubb Group Los Angeles; and Federal Insurance Company,<br><br>                Defendants. | Case No. 17-cv-01299 (SRN/BRT)<br><br>**MEMORANDUM OPINION AND ORDER** |

Shawn D. Stuckey, Glenn, Stuckey, & Partners, LLP, 1 MacArthur Place, Suite 200, Santa Ana, California, 92707, for Plaintiff.

Christopher J. Schmidt and Jonathan B. Potts, Bryan Cave LLP, 211 North Broadway, Suite 3600, St. Louis, Missouri 63102, and Joseph G. Schmitt and Scott M. Rusert, Nilan Johnson Lewis PA, 120 South Sixth Street, Suite 400, Minneapolis, Minnesota 55402, for Defendants New Jersey Devils, LLC and St. Louis Blues Hockey Club, L.P.; and

Mark R. Azman and Shamus P. O'Meara, O'Meara Leer Wagner & Kohl, PA, 7401 Metro Boulevard, Suite 600, Minneapolis, Minnesota, 55439 for Defendants Chubb Group Holdings, Inc. and Federal Insurance Company.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on the Defendants' Joint Renewed Motions to Dismiss the Plaintiff's Complaint ("Motions to Dismiss") [Doc. No. 72]. Plaintiff Michael Peluso ("Peluso") has also filed a Motion for Leave to File an Amended Complaint to Include Additional Factual Allegations ("Motion to Amend") [Doc. No. 78]. For the reasons stated

below, the Court will grant Defendants' Motions to Dismiss and deny Plaintiff's Motion to Amend.

## I.     BACKGROUND

When a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of making "a prima facie showing of personal jurisdiction over the challenging defendant." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff may meet this burden by pleading facts sufficient to support a reasonable inference that the defendant can be subjected to jurisdiction within the forum state. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). This inference is subject to testing not solely on the pleadings and matters embraced by the pleadings, but "by the affidavits and exhibits presented with the motions and in opposition thereto." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citation omitted). Where—as is the case here—the Court has not conducted an evidentiary hearing, it must view the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

With these principles in mind, the Court recites the background of the case considering not only Plaintiff's complaint, but also the affidavits and exhibits presented by both parties in conjunction with their respective motions.

### A. Parties

Michael Peluso is a former professional hockey player, who played in the National Hockey League ("NHL") from 1989 to 1998. (Compl. [Doc. No. 1] ¶ 7.) He is currently a resident of Minnesota, and he resided in Minnesota during the entirety of his NHL career. (*Id.* ¶ 13.)

Two of the defendants, New Jersey Devils, LLC and St. Louis Blues Hockey Club, L.P. ("Team Defendants"), are NHL hockey teams. (*Id.* ¶¶ 14-15.) New Jersey Devils, LLC ("New Jersey Devils"), which employed Peluso from 1993 to 1996, is incorporated in Delaware with its principal place of business in Newark, New Jersey. (*Id.* ¶¶ 7, 14.) St. Louis Blues Hockey Club, L.P. ("St. Louis Blues"), which employed Peluso from 1996 until 1997, is a Missouri limited partnership with its principal place of business in Clayton, Missouri. (*Id.* ¶¶ 7, 15.)

Defendant Chubb Group Holdings, Inc. ("Chubb") is a holding company incorporated in Delaware. (*Id.* ¶ 16; *see* Decl. of Liam Ryan [Doc. No. 21] ("Ryan Decl.") ¶ 3.) While Peluso alleges that Chubb's principal place of business is in Philadelphia, Pennsylvania, (Compl. ¶ 16), Chubb has submitted a declaration from its Vice President, Technical Officer, declaring that Chubb's principal place of business is in New York City, New York, (Ryan Decl. ¶ 3.a.). No party asserts, however, that Chubb's principal place of business is in Minnesota.

Defendant Federal Insurance Company ("Federal") is a subsidiary of Chubb. (*Id.* ¶ 4.b.) Though parties disagree about Federal's state of incorporation, none asserts that it is incorporated in Minnesota. (*See id.* ¶ 4.a. (declaring that Federal is organized under the laws

3

of Indiana); Compl. ¶ 17 (alleging that Federal is incorporated under the laws of Delaware).) The parties agree that Federal's principal place of business is in New Jersey. (Compl. ¶ 17; Ryan Decl. ¶ 4.a.) During the relevant period, Federal insured the Team Defendants for workers' compensation and employer's liability. (Ryan Decl. ¶¶ 4.g-h.)

### B. Factual and Procedural Background

Peluso played as a forward or "enforcer" during his professional hockey career, a position that required "constant initiating and engaging in bare knuckled fist fights." (Compl. ¶ 8.) During a fight in a December 18, 1993 game, Peluso was struck in the head without his helmet and lost consciousness. (*Id.* ¶¶ 21-22.) His head struck the ice when he fell, and he was later diagnosed with a concussion. (*Id.* ¶¶ 22, 25.) Within a week, Peluso was back on the ice and engaging in game-time fights again. (*Id.* ¶¶ 26, 29.) Two months later, on February 14, 1994, Peluso suffered a grand mal seizure, his first. (*Id.* ¶ 27.) He was hospitalized overnight and prescribed medication. (*Id.*)

The event that is central to Peluso's claims is Peluso's examination by the New Jersey Devils' team neurologist, Dr. Marvin Ruderman, on February 21, 1994. (*See id.* ¶ 31.) Dr. Ruderman issued a report stating his opinion that Peluso's seizure was "most likely related to a post-traumatic seizure as a consequence of the cerebral concussion in December 1993." (*Id.* Fig. 3.) Ruderman's report further stated: "I do not believe that the participation in playing hockey in itself poses an excessive risk for the development of further seizures unless [Peluso] were to sustain head injuries. He will continue to use a helmet." (*Id.*) Dr. Ruderman sent this report to the New Jersey Devils' general manager, team doctor, and orthopedic surgeon. (*Id.* ¶ 32.) Peluso's claims against Defendants are predicated on Defendants' alleged

4

concealment and tortious disregard of the Ruderman report, leading Peluso to play professional hockey for several more years and suffer irreparable damage to his brain. (*See generally id.* ¶¶ 111-243.) Peluso continued to play professional hockey for four years after his first grand mal seizure. (*Id.* ¶ 7.) In 2016, he was diagnosed with dementia and a seizure disorder. (*Id.* ¶ 55.)

In 2012, Peluso filed a workers' compensation claim in California. (*Id.* ¶ 48.) Peluso alleges that Chubb, which was a party to this claim as the Team Defendants' workers' compensation insurer, had possession of the Ruderman Report and wrongfully withheld it from discovery in that action. (*Id.* ¶¶ 48-50.)

In May 2016, Peluso did learn of the Ruderman Report when his counsel obtained it from parties in *In re NHL Players' Concussion Injury Litigation* No. 14-md-2551, a multi-district litigation in this Court.[1] (Tr. of 10/27/17 Hr'g [Doc. No. 62] ("Tr.") at 18-20.) Shortly after obtaining the Ruderman Report, Peluso filed an additional workers' compensation claim in California, alleging serious and willful misconduct under Cal. Lab. Code § 4553. (*See* Decl. of Shamus P. O'Meara [Doc. No. 20] ("O'Meara Decl."), Ex. B [Doc. No. 20-2] (Serious and Willful Petition).)

Peluso filed the instant action on April 20, 2017, alleging various torts arising from Defendants' failure to disclose the Ruderman Report, failure to warn Peluso about his risk of further brain injury, and misrepresentation of Peluso's fitness to continue playing hockey.

---

[1] Peluso is a named party in one of the lawsuits that is a part of the NHL concussion multi-district litigation. *See LaCouture v. NHL*, No. 14-cv-3234 (SRN/BRT).

(Compl. ¶¶ 111-243.)  Subject matter jurisdiction is based on diversity under 28 U.S.C. § 1332.  (*Id.* ¶ 18.)

### C. Parties' Motions

Defendants Chubb and Federal ("Insurer Defendants") moved to dismiss Peluso's Complaint on the following grounds: (1) the Court lacks personal jurisdiction over Insurer Defendants; (2) the Court should abstain from hearing the case under applicable abstention doctrines; (3) Peluso's claims are barred by the first-filed rule and the workers' compensation exclusive-remedy doctrine; (4) Peluso's claims violate the direct action rule; (5) Peluso's claims are barred by operation of the statute of limitations; (6) Peluso has failed to state a claim upon which relief may be granted; and (7) the Court should dismiss the Complaint for insufficient process and insufficient service.  (*See* Defs. Chubb Group Holdings, Inc. and Federal Insurance Company's Mot. to Dismiss [Doc. No. 17]; Chubb Defs. and Federal Insurance Company's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. [Doc. No. 19] ("Ins. Defs.' Mem. in Supp.").)

The Team Defendants also moved to dismiss Peluso's Complaint.  (Defs. New Jersey Devils, LLC's and St. Louis Blues Hockey Club, L.P.'s Mot. to Dismiss [Doc. No. 25].)  The Team Defendants argued for dismissal on the following grounds: (1) the Court lacks personal jurisdiction over the Team Defendants; (2) Peluso's claims are barred by the workers' compensation exclusive-remedy doctrine; (3) the Court should abstain from hearing the case under applicable abstention doctrines; (4) Peluso has failed to state a claim upon which relief may be granted; and (5) Peluso's claims are a wrongful attempt at claim-splitting.  (*See* Defs.

New Jersey Devils, LLC's and St. Louis Blues Hockey Club, L.P.'s Mem. of Law in Supp. of Mot. to Dismiss [Doc. No. 27] ("Team Defs.' Mem. in Supp.").)

These Motions were initially filed in August 2017, but were withdrawn pursuant to a February 2018 Stipulation, and the case was stayed. (*See* Joint Stipulation [Doc. No. 69]; Order dated 2/19/2018 [Doc. No. 71].) The stay has now expired, and Defendants have renewed their respective Motions to Dismiss. (Motions to Dismiss.)

Peluso filed a Motion to Amend, seeking to add allegations that Defendants concealed a 1994 EEG showing temporal lobe damage in Peluso's brain, as well as other medical findings from that period. (Pl.'s Mem. of Law in Supp. of Mot. to Amend [Doc. No. 79] ("Pl.'s Mem. in Supp.") at 10.) Peluso also seeks to amend the Complaint to include allegations relating to Peluso's deteriorating health, which are relevant to the personal jurisdiction issue. (*Id.* at 13.)

The Court considers each of these motions below.

**II.   DISCUSSION**

    **A. Motions to Dismiss for Lack of Personal Jurisdiction**

        **1.   Standard of Law**

"[T]he party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction." *Fastpath*, 760 F.3d at 820. Peluso argues that the Court can exercise specific personal jurisdiction over Team Defendants, (Pl.'s Opp'n to Defs. New Jersey Devils LLC and St. Louis Blues Hockey Club, L.P.'s Mot. to Dismiss [Doc. No. 43] ("Pl.'s Opp'n Team Defs.") at 10-15), and that it can exercise personal jurisdiction over Chubb and Federal by virtue of consent, general

jurisdiction, and specific jurisdiction, (Pl.'s Opp'n to Defs. Chubb and Federal Insurance Company's Mot. to Dismiss [Doc. No. 42] ("Pl.'s Opp'n Ins. Defs.") at 12-19).

The exercise of general and specific personal jurisdiction must satisfy both state and constitutional requirements. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing *Wines v. Lake Havasu Boat Mfg.*, 846 F.2d 40, 42 (8th Cir. 1988) (per curiam)). First, the contacts alleged must satisfy the state's long-arm statute. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.* Because the Minnesota long-arm statute has been held to be co-extensive with the limits of due process, this Court need only address the second of these requirements. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007); *see Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985).

The bounds of due process permit a court to exercise personal jurisdiction over a non-resident defendant when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Sufficient minimum contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fastpath*, 760 F.3d at 821 (quoting *J. McIntyre Mach.,*

8

*Ltd. v. Nicastro*, 564 U.S. 837, 880 (2011)). The timing of these acts is also important, as "[m]inimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000)).

From these core principles, the Eighth Circuit has distilled a five-factor test to be used in analyzing the propriety of a court's exercise of personal jurisdiction over a non-resident defendant. This test considers: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Pecoraro*, 340 F.3d 562 (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996)).

Moreover, the third factor, the relation of the cause of action to the contacts, serves to distinguish the appropriate theory of jurisdiction: general or specific. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original). Corporations or other business organizations are subject to general jurisdiction "'when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.'" *BNSF Ry. Co. v. Tyrrell*,

137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). The general jurisdiction analysis "does not focus solely on the magnitude of the defendant's in-state contacts," but rather "calls for an appraisal of a corporation's activities in their entirety." *Id.* (quotation marks omitted) (citations omitted).

Specific jurisdiction, on the other hand, "is very different." *Bristol-Myers*, 137 S. Ct. at 1780. In order for a court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum. *Id.* "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### 2. Defendants Chubb and Federal

Insurer Defendants argue that this Court has no basis on which to exercise personal jurisdiction over them. (Ins. Defs.' Mem. in Supp. at 7.) They emphasize that Chubb is a holding company, with no offices or employees in Minnesota, and that Chubb has never issued an insurance policy. (*Id.* at 5 (citing O'Meara Decl. ¶ 3).) Federal, which does insure Team Defendants for workers' compensation and employer's liability, conducts approximately 2% of its business in Minnesota, and maintains no employees or offices in the state. (*Id.* at 6 (citing O'Meara Decl. ¶ 4).) Insurer Defendants assert that "[n]either Chubb nor Federal engaged in any activity within Minnesota with respect to the allegations in the Complaint." (*Id.*)

Peluso argues that Chubb and Federal have consented to personal jurisdiction in Minnesota. (Pl.'s Opp'n Team Defs. at 16-17.) Citing *Knowlton v. Allied Van Lines, Inc.*,

10

900 F.2d 1196, 1199 (8th Cir. 1990), Peluso argues that Chubb has consented to personal jurisdiction by registering entities with the Minnesota Secretary of State and appointing an agent for service. (Pl.'s Opp'n Team Defs. at 16.) But while Peluso submits registration records for Chubb Alternative Risk Solutions, Inc., Chubb & Son Inc., Chubb Insurance Solutions Agency Inc., Chubb Services Corporation, and Chubb Structured Products Inc., he presents no registration records for the relevant defendant in this case—Chubb Group Holdings, Inc. (*See* Decl. of Shawn D. Stuckey in Supp. of Pl.'s Opp'ns to Defs.' Mots. to Dismiss [Doc. No. 46] ("Stuckey Decl."), Ex. D [Doc. No. 46-4] (Business Filings).) Insurer Defendants are correct that the Court cannot exercise personal jurisdiction over them on the basis of a third party's consent. (*See* Defs. Chubb Group Holdings, Inc. and Federal Insurance Company's Reply Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. [Doc. No. 50] ("Ins. Defs.' Reply") at 1-2.) Thus, Peluso's argument that Insurer Defendants have consented to personal jurisdiction in Minnesota is unavailing.[2]

Peluso also argues that Insurer Defendants' contacts in Minnesota are so continuous and systematic that they are subject to general jurisdiction in the state. (Pl.'s Opp'n Ins. Defs. at 14-16 (citing *Dairy Farmers*, 702 F.3d at 475).) As support for this claim, Peluso asserts that Chubb has two offices in Minnesota and submits as evidence a printout from a career-interest webpage associated with Chubb. (*See* Stuckey Decl., Ex. C [Doc. No. 46-3] (Chubb Locations).) This printout includes a long list of "regional and branch network . . . locations,"

---

[2] Because it finds no arguable consent to personal jurisdiction here, the Court need not address Insurer Defendants' argument that *Knowlton* has been implicitly overruled by subsequent Supreme Court precedent. (Ins. Defs. Reply at 1-2.)

including two in Minnesota.  (*Id.*)  Peluso argues that Chubb's "numerous and substantial connections with Minnesota" subject it to general jurisdiction, which Peluso asserts can then be imputed to Chubb's subsidiary, Federal.  (Pl.'s Opp'n Ins. Defs. at 16; *see id.* at 14 (citing *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004) (holding that courts need not pierce the corporate veil to consider activities of a subsidiary company in evaluating personal jurisdiction over the parent company)).)

In the first instance, the Court does not consider Peluso's list of "Chubb" locations to be strong evidence that defendant Chubb Group Holdings, Inc. has continuous and systematic contacts in Minnesota.  It is not clear from the list which Chubb entity or entities it refers to, and Peluso has provided no additional information about these purported Minnesota Chubb offices.  (*See* Stuckey Decl., Ex. C.)  Further, even assuming that these locations are associated with Chubb Group Holdings, Inc. in some meaningful way, that does not reach the extraordinarily high threshold that the caselaw sets for general jurisdiction.  Peluso's exhibit lists locations in 37 states and territories, and it would be impossible to conclude that Chubb is "essentially at home" in all of them.  As the Supreme Court recently emphasized in *BNSF Railway Co.*, "'[a] corporation that operates in many places can scarcely be deemed to be at home in all of them.'"  137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20).  There is no general jurisdiction over Chubb or Federal in this case.

Finally, Peluso argues that Insurer Defendants are subject to specific jurisdiction.  Peluso asserts that "Defendants purposefully directed their unlawful conduct at Peluso in Minnesota because they had an obligation to provide Peluso with medical care, and included in that obligation, supply his treating physicians with crucial information which could have

12

prevented substantial deterioration of his physical condition." (Pl.'s Opp'n Ins. Defs. at 18.) Though he does not explicitly cite it, Peluso appears to be relying on the *Calder* effects test, which provides that

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (quotation marks omitted) (citation omitted); *see also Calder v. Jones*, 465 U.S. 783 (1984). In the Eighth Circuit, the *Calder* test is used "merely as an additional factor to consider when evaluating the defendant's relevant contacts." *Id.*

Peluso also asserts that the document production in the Minnesota multi-district litigation that led to his counsel obtaining the Ruderman Report is "clearly an activity or occurrence taking place in Minnesota," and that "this conduct clearly connected Defendant[s'] actions to Minnesota." (Tr. at 22.) Finally, Peluso argues that the convenience of the parties, though a secondary factor, weighs strongly in his favor because his seizure disorder prevents him from traveling for litigation. (Pl.'s Opp'n Ins. Defs. at 19.)

Insurer Defendants assert that specific jurisdiction is inapplicable in this case because it "'looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" (Ins. Defs.' Reply at 2 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014).) They argue that Peluso's allegations, even taken as true, fail to show that "Chubb or Federal concealed anything *in* Minnesota." (*Id.* at 3.) Insurer Defendants also argue that the *Calder* effects test is narrowly construed in the Eighth Circuit, and that Peluso

13

cannot satisfy it because Chubb and Federal lack any actual contacts in Minnesota connected with his claims. (Ins. Defs. Mem. in Supp. at 12-13.)

For specific jurisdiction to apply, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Here, Peluso argues that Insurer Defendants are subject to personal jurisdiction in Minnesota because they violated their obligation to provide his physicians with crucial information for his treatment here—but this describes a connection to Peluso, not to the state of Minnesota. Peluso also refers to Insurer Defendants' concealment of documents that they ought to have produced in the California workers' compensation action, such that they were only discovered in connection with a different litigation in Minnesota. But the Court does not see a meaningful connection to Minnesota in that conduct. Insurer Defendants' alleged discovery misconduct took place in a California case, and even if it injured Peluso in Minnesota, it cannot give rise to minimum contacts here. If it could, any litigating party might be haled into court in the opposing party's home state for doing nothing more than litigating against a foreign party.

Specific jurisdiction requires "'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). Peluso has shown no such activity or occurrence here.

### 3. Defendants New Jersey Devils and St. Louis Blues

Team Defendants also move to dismiss for lack of personal jurisdiction. They note that, during the period that Peluso was employed by the New Jersey Devils or St. Louis Blues, Minnesota did not have a professional hockey team. (Team Defs. Mem. in Supp. at 7-8.) Thus, Peluso did not play a single NHL game in Minnesota during his employment by Team Defendants. (*Id.*)

Peluso does not assert that consent-based personal jurisdiction or general jurisdiction exists over Team Defendants. (Pl.'s Opp'n Team Defs. at 10-15.) He argues that Team Defendants are subject to specific jurisdiction because they directed their fraudulent conduct "at Peluso in Minnesota," (*id.* at 10), by fraudulently inducing him to enter an employment contract to play professional hockey despite extreme risk to his health, (*id.* at 13). Peluso notes that his employment contracts required him to participate in promotional activities, including some "directed at and within Minnesota." (*Id.* at 13-14 (citing Stuckey Decl., Ex. J (New Jersey Devils Contract at 2).) Peluso also argues that Team Defendants directed their conduct at Minnesota by fraudulently inducing him to execute a release of claims against the NHL and member teams, which was signed in Minnesota in 2000. (*Id.* at 14 (citing Stuckey Decl., Ex. K (NHL Release).) Peluso cites two cases in which personal jurisdiction arose based on an employment contract with an employer in the forum state: *Patterson Dental Supply, Inc. v. Vlamis*, No. A16-0399, 2016 WL 4596881 (Minn. Ct. App. Sept. 6, 2016) and *Custom Conveyer Corp. v. Hyde*, 237 F. Supp. 3d 895 (D. Minn. 2017). (*Id.* at 12-13.)

Similar to Insurance Defendants, Team Defendants argue that Peluso's arguments fail because he does not show that Team Defendants' conduct connected them to *Minnesota*,

rather than simply to *Peluso*.  (Defs. New Jersey Devils LLC's and St. Louis Blues Hockey Club, L.P.'s Reply Mem. in Supp. of Mot. to Dismiss [Doc. No. 53] ("Team Defs.' Reply") at 3.)  Team Defendants further argue that the 2000 release does not confer jurisdiction because it was executed by the NHL, not by Team Defendants, and that the cases Peluso cites are distinguishable.  (*Id.* at 3-5.)

The Court agrees that the cases Peluso cites are distinguishable.  In *Patterson Dental Supply*, the court held that an employee residing in Pennsylvania had sufficient minimum contacts with Minnesota when he had worked for 17 years for a Minnesota corporation, traveled to Minnesota over a dozen times for work, taken a month-long training course in Minnesota, and obtained the confidential business information that he was accused of misappropriating at annual managers' meetings in Minnesota.  2016 WL 4596881, at *1. *Custom Conveyor Corp.* involved similar facts, in which an out-of-state employee worked for a Minnesota corporation and engaged in significant contacts with the state as a part of that employment.  237 F. Supp. 3d at 897.  Here, aside from the fact that Peluso is a resident of the state of Minnesota, nothing about Team Defendants' employment relationships with Peluso required meaningful contact with Minnesota or caused them to avail themselves of the benefits and protections of Minnesota's laws.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  As with the Insurer Defendants, the Court does not see any conduct by Team Defendants that was purposefully aimed at the state of Minnesota or that took place in Minnesota and forms the basis for Peluso's claims here.  Further, to the extent that Peluso asserts minimum contacts based on production in the Minnesota multi-district litigation of

documents allegedly withheld in the California workers' compensation case, the argument fails for the same reason it fails against Insurer Defendants. *See supra* Section II.A.2.

The Court acknowledges that Peluso's health may prevent him from traveling to a forum in which Defendants are subject to personal jurisdiction and sympathizes with the obstacles that causes. But "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284; *see also Bristol-Myers*, 137 S. Ct. at 1780 (stating that the "primary concern" informing a due process personal jurisdiction analysis is "the burden on the defendant"). Here Peluso has not shown that Defendants have the necessary contacts with Minnesota to support personal jurisdiction over them. Defendants' Motions to Dismiss will be granted on the ground of lack of personal jurisdiction, and the Court need not address Defendants' other arguments for dismissal.

### B.  Motion for Leave to Amend

Peluso has moved to amend his Complaint to add allegations that he argues are relevant to the Motions to Dismiss. (Pl.'s Mem. in Supp. at 15-18.) To the extent that these new allegations go to Defendants' other, non-jurisdiction-related grounds for dismissal, they are futile in light of the Court's determination that it lacks personal jurisdiction. *See supra* Section II.A. Because the Court looks beyond the Complaint to consider external evidence in a personal jurisdiction analysis, it is not clear whether amendment to the operative complaint is a proper defense to a personal jurisdiction attack. *See Dairy Farmers*, 702 F.3d at 475 (stating that a personal jurisdiction analysis considers affidavits and exhibits outside of

the pleadings). Even so, the Court concludes that Peluso's proposed amendments do not change the result of the personal jurisdiction analysis.

Peluso's new allegations include more detail about Peluso's inability to travel due to his health, the purported discovery violations in the California workers' compensation action, and medical records from the time of Peluso's first grand mal seizure, including an EEG performed 1994 that showed temporal lobe damage to Peluso's brain. (*See* Proposed Am. Compl. [Doc. No. 78-1]; Pl.'s Mem. in Supp.) But as the Court has explained above, the inconvenience of Peluso's inability to travel does not have controlling effect in the personal jurisdiction analysis, and Defendants' conduct in the California workers' compensation case does not establish minimum contacts in the state of Minnesota. *See supra* Section II.B. Further, the Court has already rejected Peluso's argument that Defendants' concealment of medical records gives rise to personal jurisdiction. *Id.* Nothing in Peluso's Proposed Amended Complaint shows that Defendants' conduct is connected to Minnesota by anything other than Peluso's residence here. (Proposed Am. Compl.) For these reasons, the Court will deny Peluso's Motion to Amend as futile. *See U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) ("Futility is a valid basis for denying leave to amend.").

### III.    ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Defendants' Joint Renewed Motions to Dismiss Plaintiff's Complaint [Doc. No. 72] are **GRANTED**;

2. Plaintiff's Motion for Leave to File an Amended Complaint [Doc. No. 78] is **DENIED**.


Dated:  August 24, 2018                        **s/Susan Richard Nelson**
                                               SUSAN RICHARD NELSON
                                               United States District Judge